MAIL & EXPRESS CO. *v.* WOOD.

1. PLEADING—NOTICE OF RECOUPMENT—BREACH OF CONTRACT—
   ISSUES.
   Fraud in the inception of a contract is not provable under a
   notice of recoupment setting up specific breaches of the con-
   tract.

2. SAME — CONTRACT — ASSUMPSIT — GENERAL ISSUE — MATTERS
   PROVABLE.
   In assumpsit on a contract, proof that the contract declared on
   was never made is admissible under the general issue.

3. STATUTE OF FRAUDS—ADVERTISING CONTRACT—ONE YEAR.
   A contract to insert an advertisement in a newspaper for one
   year is not within the statute of frauds.

4. CONTRACTS — PROPOSAL AND ACCEPTANCE—AGENCY— QUESTION
   FOR JURY.
   Evidence examined, and *held,* that whether an order for adver-
   tising was accepted orally by a person assuming to be plain-
   tiff's agent, and whether such person was plaintiff's agent,
   were questions for the jury.

5. SAME—ADVERTISING CONTRACT—CONSTRUCTION.
   A contract authorizing plaintiff to insert in his newspaper de-
   fendant's advertisement on certain days, to be used during
   one year, as per copy furnished by defendant, will be con-
   strued as an agreement to furnish the copy within a reason-
   able time.

6. EVIDENCE—CONTRACTS—PAROL EVIDENCE.
   Where a written contract between defendant, a manufacturer,
   and plaintiff, required plaintiff to insert defendant's adver-
   tisement in plaintiff's paper on certain days during one year,
   as per copy furnished by defendant, for which payment was
   to be made at a specified rate per line, there was no ambiguity,
   so as to authorize the admission of parol evidence showing
   when publication was to commence, and showing that it was
   also understood that plaintiff should distribute certain goods
   to retailers for defendant.

Error to Wayne; Donovan, J. Submitted February
17, 1905. (Docket No. 183.) Decided June 12, 1905.

Assumpsit by the Mail & Express Company against Albert F. Wood for work and labor done. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*Clark, Jones & Bryant,* for appellant.

*Seward L. Merriam,* for appellee.

BLAIR, J. This case was commenced in justice's court; the plaintiff declaring in an action of assumpsit on 'all the common counts, and especially upon the following written agreement:

"DETROIT, MICH., June 11, 1901.
"PUBLISHERS OF MAIL AND EXPRESS,
"New York, N. Y.

"*Gentlemen:* Please insert in your paper our advertisement of 2,000 lines, Tuesday, Thursday and Saturday, to be used during one year, as per copy furnished by us, for which we agree to pay you 15c. per agate line monthly for space used, reserving privilege of increasing to 5,000 lines, rate pro ratio. Advertisement to be placed in Crittenden and Co.'s space, but when we so desire we can place it in some other part of paper independent of Crittenden.

"Respectfully,
"ALBERT F. WOOD."

The defendant pleaded the general issue, with notice of set-off and recoupment. The notice of recoupment is very long, but it seems essential to set it forth at length, in order to a proper understanding of the proceedings in the circuit court upon appeal. It was as follows:

"To the Above Named Plaintiff: Please to take notice that the above named defendant will, on the trial of the above entitled cause, give in evidence and insist under the general issue above pleaded that—

"The plaintiff has committed acts of great wrong and injury to this defendant by reason of several injurious acts, by violation of its agreement with said defendant, and by misrepresentations, injury and fraud against this defendant.

"That the said plaintiff agreed and undertook, through its agent, who acted for said plaintiff, and whose acts were afterwards ratified and confirmed by this plaintiff, to deliver and consign to certain druggists and dealers of the city of New York certain of defendant's goods, wares and merchandise, before the publishing of advertisements in plaintiff's paper.

"That the defendant, acting in good faith, did, upon the instructions of said plaintiff, through its said agent, one A. E. Miller, send to New York to the C. M. Crittenden Co. certain goods which plaintiff undertook through its said agent to deliver to certain druggists and dealers and afterwards to advertise that such goods were to be procured of such dealers.

"But that said plaintiff wholly neglected to carry out its said agreement and did not and never did deliver said goods to said druggists and dealers, to defendant's great damage and injury.

"That plaintiff, in its said announcements and advertisements, for the publication of which a judgment is sought against this defendant, did specifically announce and state that defendant's said goods were in stock at the places of business of said druggists, although by reason of the default of plaintiff this statement was false, untrue and injurious.

"Defendant will offer evidence to show further that in its said advertisement plaintiff stated that 'substitutes' for defendant's goods would not be offered by such dealers, but that said statement was untrue, for said dealers did constantly offer substitutes.

"Defendant will offer evidence to show that said plaintiff undertook to publish a list of the dealers to whom plaintiff undertook to deliver and consign defendant's goods, with their correct city addresses; but that although plaintiff did publish such an alleged list, the addresses were wrong, false and misleading to the public, and that said dealers were not so located and doing business as stated in said advertisements, to the great injury of defendant.

"Defendant will further offer evidence to show that the false, misleading, and untrue advertisements so inserted by plaintiff were not a benefit, but, on the contrary, a great and permanent injury to defendant's business.

"That the failure to carry out the agreements on the part of plaintiff, and which agreements were the sole in-

ducement to this defendant in allowing plaintiff to print such advertisements, was a great injury to defendant's business, far greater than the amount of said plaintiff's claim.

"That such false and misleading announcements as made by plaintiff through its failure to keep faith and carry out the agreement made and entered into with defendant, worked far greater injury and damage to defendant than the amount of plaintiff's said claim.

"That said advertisements, designed to announce to and inform defendant's customers where his said goods were to be obtained, were false and misleading and untrue, and that the greater publicity given to such announcements by said plaintiff, the greater the injury to defendant.

"That said false and misleading announcements instead of benefiting defendant's trade worked direct injury by reason of the impossibility of defendant's customers obtaining his said goods as advertised, and by the further reason that said dealers did substitute other goods for his, so making customers for other goods, not defendant's goods, although by its said agreement and contract, as ratified in tact by the publishing of said announcements, it was expressly agreed and so announced in said advertisements that said dealers would not substitute other goods but would supply only defendant's goods when asked for same. But by the reason of the violation of plaintiff of its said contract, and by reason of its false and injurious announcements, and its said failure to deliver said goods, defendant's customers were unable to obtain said goods, thus making the advertisements of direct and great injury to defendant and to his trade in the city of New York, and outside the city of New York, wherever said newspaper published by plaintiff circulated. And by reason of which several fraudulent acts of plaintiff and said plaintiff's false and misleading advertisements, defendant's business has been severely injured wholly without his fault, but solely by reason of the wrongful acts of plaintiff.

"And by reason whereof the said defendant has sustained great injury and damage to a large amount, to wit, the sum of five hundred dollars, which said damages the said defendant will recoup against any claim that may be proved against him by the said plaintiff on said trial, and will apply the same, or as much thereof as may be necessary to the satisfaction of said claim, if any, which the

said plaintiff may prove, as aforesaid, and will have the balance certified in his favor.

"Dated Detroit.

"Yours, etc.,
"ANDERSON & RACKHAM,
"Attorney for Defendant."

Judgment having been rendered in favor of the defendant, plaintiff appealed the case to the circuit court. Prior to the taking of any testimony in the circuit court, defendant's counsel made his opening statement to the jury, in which he said, among other things:

" We claim that this contract was obtained by the fraud of this man Miller; that is, fraudulent representations and inducements were given to Mr. Wood at that time for the purpose of inducing him to sign this order. This order is not the whole contract. We intend to show the fraudulent inducements, which all the authorities hold is proper and competent.

" *The Court:* I suppose in that way it would be offered as bearing upon the consideration.

" *Mr. Merriam:* And as bearing upon the inducements.

" *The Court:* Do you object to it as bearing upon that?

" *Mr. Clark:* Yes. This is the first notice we have had of any representation or fraud in this case.

" *Mr. Merriam:* This isn't the first inducement that you have had. This case was tried in justice's court, and Mr. Miller was there.

" *The Court:* What do the pleadings show?

" *Mr. Merriam:* They show quite fully. (Pleadings read.)

" *The Court:* You have alleged far enough to leave him to say the consideration of the contract, the breach of the contract, the fraud in the inception of the contract, that you may enter upon these things. That is apparently the claim, and that you may state to the jury what you expect to prove as bearing upon those things. There is no doubt about the ruling. (To which ruling counsel for plaintiff then and there excepted.)

" *The Court:* The King Will Case held that the counsel may state what he expects to prove by competent testimony on his side of the case.

" *Mr. Merriam:* We claim it was a matter of inducement and fraudulent misrepresentation," etc.

After this statement of defendant's theory, as outlined by his counsel in his opening statement and his replies to the court, plaintiff offered in evidence the alleged contract above set forth, and gave evidence tending to show that the advertising called for by the order was published in the Mail & Express beginning July 15, 1901, and ending on December 5, 1901, upon which defendant had paid the sum of $31.88, leaving a balance due to the plaintiff of $268.27. Plaintiff also called as a witness Mr. William G. Bryant, a member of the bar, who had charge of the suit in justice's court, who testified to a conversation with defendant, Wood, about the account, in which he asked Mr. Wood if the advertisement was inserted, " and he said yes, but it was not inserted according to the talk he had with Mr. Miller, and the agreement they hadn't carried out—certain terms in the agreement he had made to him in regard to distribution of certain goods, and that certain druggists didn't have preparations, as they should have had, and it was a damage to him, considerably, in his business. That was the statement he made to me. The only objection he made to it was that they hadn't distributed the goods in conformity with some oral agreement he claimed to have had with Miller." Thereupon plaintiff rested his case.

Defendant, to maintain the issue on his part, called as a witness Mr. Edward Meiser, the business manager of the Free Press, to whom he exhibited the alleged contract, which was marked " Exhibit A," and propounded the following question:

" Q. I show you paper marked 'Exhibit A,' dated June 11, 1901, and ask you to read it. It has been read to the jury.  *  *  *

" Q. Does that order state when this advertisement is to start? (Objected to as immaterial. The order shows for itself. Objection overruled.)

"A. No, sir; it fails to state.

" Q. In an order of that sort— In the use of such orders in the publishing business, Mr. Meiser, who would have

the right to designate when they are to start ?    (Objected to as incompetent and immaterial.)

" *The Court:* I think that comes within the rule that anything that belongs to a special trade or profession, known to them more than a layman—certainly known better than I would know it—we have to take the expert testimony.    He is an expert.    (To which ruling plaintiff's counsel then and there excepted.)

" *The Court:* Who would have it?

"*A.* The advertiser himself."

Defendant also testified in his own behalf to the writing and mailing of a letter marked "Exhibit C," as follows:

"DETROIT, MICH., July 10, 1901.
"A. H. MILLER, Esq.

" *My Dear Sir:* I have sent with mdse. to Crittenden the 38 advertising plates proofed on the enclosed sheet. You will please note that these are numbered and insertions of advs. are to be in order of numbers on proof, viz. : First insert No. 3, then 4 and so on until entire series has been run, when beginning with No. 3, insert again.

"I am preparing the Satin-Skin Powder samples for the druggists who are to have the special advertising, and as soon as same are ready I will make shipment.    Meantime, however, on arrival and distribution of the goods you may start insertion of plates, as per above, and indicated on the enclosed sheet.

"Yours very truly,
"ALBERT F. WOOD."

That up to the time of writing this letter he had not designated when the advertisement was to start, nor had he given them any material out of which to start the advertising, nor up to that time had they started to advertise, to his knowledge, nor had his order been accepted in writing.    Plaintiff's counsel objected to the introduction of this letter and evidence upon the ground that it was sought by it to vary the contract by parol, in response to which objection the court said:

" You don't need to read a word on that.    Where there is a reduction to writing on the one side, we have a contract unilateral, as they call it; but where was there a meeting of the minds ?    This is a proposal where a party

is to do so and so, and where is there a full meeting of the minds ? "

Whereupon the objection was overruled, and plaintiff excepted.   Defendant also testified that at the time of writing this letter of July 10th he sent forward the advertising matter and goods to be distributed to the druggists by freight.   In the course of his examination the defendant was asked the following question :

" Will you state what the usage is as to its being within the control of the advertiser ordering the advertising to designate when this advertising was to start ?   (Objected to as incompetent, irrelevant, and immaterial.   Objection overruled and exception taken.) "

He was also asked :

" Q. Now, on the order, what, if anything, was said by Mr. Miller to you by way of inducement or promises to obtain this order?   (Objected to as incompetent, immaterial, and irrelevant;  also that it was trying to add something or take something away.)

" The Court: As a rule, this morning, I think, I apprehend it as bearing upon the consideration;  that is, what was to be given or what was to be done, as bearing upon the consideration—whether it would be necessary to do anything more, or whether the contract covered everything absolutely.   I think we will hear it.

" Mr. Merriam: I think it already appears.

" Mr. Clark: I take an exception to that, and object to it for the further reason that there is no such claim made in the notice.   The notice is purely one of recoupment; no lack of consideration or fraud or misrepresentation, nor effort to rescind the contract.

" The Court: No notice of fraud ?

" Mr. Clark: No, sir; purely and simply one of recoupment.

" Mr. Merriam: I don't know what these words mean, then.

" The Court: Read it again.   (Pleadings read.)

" The Court: You have stated that sufficiently to put them on notice.

" Mr. Clark· I take an exception to that.

" Q. Now, Mr. Wood, will you state what the conversation was with Mr. Miller by way of inducement or prom-

ises to you in order to secure from you this order? (Objected to as incompetent and immaterial.)

"*The Court:* I think we had better put that in this way: Was there anything that you was to furnish, whatever, before they started out with the advertising? Was there anything that you sent on to furnish before they started advertising?

"*Mr. Merriam:* That is only a part of it. We have up to date here—I mean up to the date of this order— nothing in the world but the order that is a contract, under the authorities; and your honor is familiar with cases. You struck the nail squarely on the head when you said it is unilateral. It is there in writing or parol, and, if parol, it isn't actual contract anyway. We have had to resort to oral evidence. We claim the unilateral contract they had was obtained by a fraud, and the case my brother has read is all the authority we need to come into it.

"*The Court:* I think I will open the door, and you may answer. (To which ruling plaintiff's counsel then and there excepted.)"

Defendant then testified:

"A. E. Miller came into my office—my factory. He stated he was soliciting advertising; that he represented a combination between the New York Mail & Express newspaper and Charles M. Crittenden, wholesale druggists in New York, who were associated in what was called the 'Crittenden Space' in the Mail & Express. That was a number of proprietary manufacturing advertisements grouped together, and at the bottom of this space was a list of the druggists' names that would keep these goods in stock at all times, and produce them when called for by customers; and I told Mr. Miller that I had sold Crittenden & Co. for years, and also that his price for the advertisement—15c. a line—was very high, inasmuch as the Mail & Express was a comparatively small newspaper. I believe it has about one-sixth or one-seventh of the circulation of the Detroit News, and I doubted the advertising would be of value commensurate with the cost.

"*Mr. Clark:* I want the record to show a further reason for the objection. It isn't covered by the notice of pleadings in this case, and I take an exception.     *     *     *

"This Mr. A. E. Miller stated that if I would give him

an order for advertising to be placed in the Crittenden space, and that I was to ship my goods to C. M. Crittenden, to be assigned to all these druggists whose names appeared at the bottom of the space in the Mail & Express. Mr. Miller stated that, if I would give him an advertisement, that he would see my goods were shipped to Crittenden & Co.—were shipped and placed with all these druggists; he would give it personal attention also. And with this inducement or fact that my goods would be placed, I gave him an advertisement here, and shipped the stock of my goods to C. M. Crittenden.   *   *   *   I shipped the goods about a month later, when I wrote this letter to Crittenden & Co.   Shipped by freight.   In this shipment I put the plates for the advertising matter.   I didn't send them direct to the Mail & Express.   I put them in the freight shipment to the wholesale druggists."

Plaintiff contends that the defendant entirely changed his theory of the case in the circuit court; abandoning the claim of a breach of contract set up in his notice of recoupment, and defending upon the ground that he was induced to enter into the contract by misrepresentation and fraud.   We think the contention of plaintiff's counsel in this regard is correct, and that the trial judge erred in permitting testimony to be given of alleged fraudulent misrepresentations or inducements under the notice above set forth, which, though somewhat inartistically drawn, is, in our opinion, clearly a plea in recoupment, claiming damages for the breach on the part of plaintiff of a valid, subsisting contract.   The trial judge, however, announced his opinion early, and finally decided the case; directing a verdict for defendant upon the ground that the alleged contract was a mere order, which never ripened into a contract, for the reason that it was not accepted by the plaintiff until after its terms as an order had been lawfully changed by the defendant.

If the court was correct in this view of the relations of the parties, any errors that may have been committed in the admission of testimony would probably have been without prejudice, since this defense was available under the general issue; and it was conclusively shown by defend-

ant, and not controverted by the plaintiff, that the advertisements were published before the defendant's goods were distributed as required by his letter of July 10th. It becomes important, therefore, to ascertain whether there was any evidence in the case which would warrant the jury in finding an acceptance of the original order prior to the letter of July 10th. In determining this question it is necessary to bear in mind that the proposed contract was not one which the law required to be evidenced by writing. There is no question of the statute of frauds here. *Cohen* v. *Jackoboice*, 101 Mich. 409. The order might have been given verbally and accepted verbally, and, although the order was in writing on the part of defendant, it was competent for the plaintiff or its duly authorized. agent to accept it verbally, and in such case a contract would ensue, binding upon both parties. Plaintiff's witness Mulheron testified that he was plaintiff's advertising clerk. "Exhibit A came to me from the business manager of the Mail & Express in the regular course of business, and I entered it as an order." Indorsed at the bottom of the contract appeared the following: "Entered July 13th to July 10th, 1903 E. S." No explanation appears in the record or briefs of this date, "1903," and we presume it was so written by mistake for "1902," or is a typographical error. The order was evidently sent down to the advertising clerk immediately after receipt of defendant's letter notifying plaintiff that he had sent the copy to be furnished by him, and publication was begun on the 15th, which was, of course, after the copy had arrived. Defendant testified:

" I didn't draw the order. It was dictated by Mr. Miller to one of the clerks, and afterwards signed by me. I don't think that Mr. Miller or the Mail & Express accepted this order at that time, *except orally.* They didn't sign it. There was no written contract of it. * * *
"A. E. Miller came into my office—my factory. He stated that he was soliciting advertising; that he represented a combination between the New York Mail & Express newspaper and Charles M. Crittenden, whole-

sale druggists in New York, who were associated in what was called the ' Crittenden Space' in the Mail & Express. * * *

"I don't know how the Crittenden & Co. obtained the space in the Mail & Express. I know they had the space, and the Mail & Express solicited advertisements for the Crittenden space. * * * Before the advertisement started he was in my place of business, and *I made an agreement with him then and there.*"

Mrs. Minnie E. Thompson testified for defendant that she was employed by defendant as order clerk when the order was taken, and wrote it out at Miller's dictation in the presence of Mr. Wood.

" After it was finished, Mr. Miller looked it over first, and there was some word that he wanted changed, and then it was handed to Mr. Wood, and it was signed. The change that was made was: It read, ' To be used for one year,' and it was changed, ' To be used during one year.' That change was made by Mr. Miller. He objected to the word ' for.' He then handed it to Mr. Wood, and he signed it."

We do not think it can be said, in view of the foregoing testimony, that there was no evidence to go to the jury as to the agency of Mr. Miller, and his acceptance of the order on behalf of the Mail & Express.

The defendant's counsel also seeks to justify the admission of the testimony and the direction of a verdict on the ground that by the terms of the oral agreement the order was not to become obligatory until the goods were distributed, on the authority of *Cleveland Refining Co.* v. *Dunning,* 115 Mich. 238. We do not think the proofs bring this case within the ruling of this court in *Cleveland Refining Co.* v. *Dunning,* supra. In that case the defendants signed an order for 10 barrels of oil upon the understanding that it was to be obligatory only in case the defendants should be allowed to cancel a similar order previously given to the Standard Oil Company. There was a clear understanding that the cancellation of the one order was to be a condition precedent to the taking effect

of the other. In the present case the contention, as stated by counsel for defendant, was:

"We claim that this contract was obtained by the fraud of this man Miller; that is, fraudulent representations and inducements were given to Mr. Wood at that time for the purpose of inducing him to sign this order," etc.

The testimony of the defendant was in harmony with the theory announced by his counsel, and an expert was called to testify as to the right on the part of defendant, under the order, to designate the time when the advertising should commence. It seems apparent to us that the fact that an agreement in the terms of the order had been entered into by the parties was never questioned, except as to its extent, until after the court announced his opinion to that effect. The notice under the plea of the general issue added to and then attacked the performance of the agreement. The opening statement of his case by defendant's counsel attacked the contract for fraud. The court took the case from the jury on the ground that there was no contract between the parties at all, because it was never accepted by the defendant. It is now claimed in addition that the contract, though made, was not to become binding until the goods were distributed. If defendant's counsel, in stating his theory of the case, was stating the theory upon which it had been tried in the justice's court, then it seems clear that the plaintiff's counsel would not be likely to anticipate a change of position in the circuit, involving the whole theory of the defense. We think the case is ruled by *Cohen* v. *Jackoboice*, supra, and that the evidence was inadmissible.

We do not think there was any such ambiguity in this contract as to justify a resort to parol testimony to explain when the publication of the advertisement should begin. Publication was to begin when defendant furnished the copy therefor, and, no time being specified, the law will imply an agreement to furnish the copy within a reasonable time. *Stange* v. *Wilson*, 17 Mich. 342; *Harrow*

*Spring Co.* v. *Whipple Harrow Co.,* 90 Mich. 147. Plaintiff's objections to the admission of the testimony of Mr. Meiser and similar testimony should have been sustained.

For the reasons given, we think the judgment should be reversed, and a new trial granted, and it is so ordered.

CARPENTER, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.