SMITH *v.* MATHIS.

1. FRAUDS, STATUTE OF—EVIDENCE—SPECIFIC PERFORMANCE—PA-
   ROL EVIDENCE — PRELIMINARY CONDITION — VENDOR AND PUR-
   CHASER.
   In a suit for specific enforcement of a land contract, testimony
   of the vendor that it was orally agreed, at the time the mem-
   orandum or agreement was signed, that it should be consid-
   ered abrogated unless the vendor's title could be cleared up
   within two months, was inadmissible to vary or add to the
   writing that contained no such conditional clause: under the
   statute of frauds (3 Comp. Laws, § 9511, 4 How. Stat. [2d Ed.]
   § 11395), the memorandum was conclusive if it contained the
   requisites of a valid contract.

2. SAME—EXECUTION OF CONTRACT—LAND CONTRACT—MUTUALITY.
   Having accepted the memorandum signed by the vendor, the
   purchaser was bound by the instrument even if he did not,
   as claimed by the vendor, sign the writing until a later date.

3. SPECIFIC ENFORCEMENT — SUBSEQUENT INCUMBRANCE — MORT-
   GAGES—DECREE.
   As to a subsequent mortgage of premises that defendant had
   bound herself to convey by a sufficient memorandum of sale,
   complainant, who is entitled to a decree of specific perform-
   ance, may be allowed, by the final order, to pay the mort-
   gage debt, receiving credit for the amount so required upon
   the agreed purchase price.

Appeal from Wayne; Mandell, J. Submitted January
13, 1913. (Docket No. 36.) Decided March 20, 1913.

Bill by Isaac Smith against Rose Mathis and Edward
Mathis for specific performance of a contract for the sale
of land. From a decree for defendants, complainant ap-
peals. Reversed.

*Sloman & Sloman,* for complainant.

*Edward Pokorny (Bernard B. Selling,* of counsel),
for defendant Rose Mathis.

STONE, J. Complainant filed his bill of complaint pray-

ing for the specific performance of an agreement made between him and the defendant Rose Mathis, the memorandum in writing of which is as follows:

"$50.00.

"Received from Isaac Smith, of Detroit, Michigan, the sum of $50.00 to apply on purchase price of $9,500.00 for the following piece of real estate in Detroit, Michigan: the southwest corner of Alfred and Hastings street, same extending 95 feet on Hastings street, and 53 feet on Alfred St., together with buildings at present on same. I agree at once to furnish said Smith with a Burton or Union Trust abstract, brought down to date, and showing perfect title in myself. Immediately after furnishing said abstract and its being found perfect by said Smith's attorneys I agree to enter into the usual Burton form land contract with said Smith, he to pay $1,-950.00 more at time of execution of said contract, and the balance in payments each quarter of $175.00, interest at rate of 6% per annum, being also payable quarterly and to be included in said $175.00 payments, and to be deducted therefrom. Should said title not be satisfactory to said Smith's attorneys, I agree at once to return to him the $50.00 deposit. The entire principal still due at end of ten years shall be payable at that time.

her<br>
"MRS. ROSE X MATHIS.<br>
mark

"Sept. 26, 1910.
"Witnesses:
 "BENJAMIN FRUMIN.
 "L. SIEGEL.
"I hereby agree to all above terms and conditions.

"ISAAC SMITH."

Complainant by his bill further represented that he had always been ready and willing to comply with the terms of said agreement on his part to be performed; that at the time of the signing of said agreement he paid $50 in accordance with its terms, and thereupon it became the duty of said defendant Rose Mathis to have prepared and brought down to date either a Burton or Union Trust abstract showing title in herself; that complainant had frequently requested her to prepare such abstract, so that he

might pay to her $1,950 upon the execution of a land contract, in accordance with the terms of the aforesaid agreement, yet the said defendant refused to comply with the agreement on her part, although he had always been ready and willing to pay said sum and fully perform his part of the agreement whenever said defendant would make and deliver to him such abstract, showing perfect title in herself, and a contract executed within the terms of said agreement. He further represented that after the making of said agreement said defendant had conveyed, or threatened to convey, the said property to her husband, Edward Mathis, for the purpose of hindering complainant in obtaining the enforcement of said contract.

By her separate answer the defendant Rose Mathis admitted that she was the owner of the property described in the bill of complaint. She averred that at the time of the signing of the agreement there was pending in the Wayne circuit court, in chancery, a divorce suit between the two defendants, and that at the time of the beginning of said divorce suit there was filed in the proper office a notice of *lis pendens* against the property described; that, in addition to that, the court had allowed an injunction to issue against this defendant restraining her from in any manner assigning, transferring, or disposing of said property; that at the time of signing the agreement she was under a severe mental strain and on the verge of a nervous prostration, resulting from the care she gave to her minor children while suffering from a severe illness, and also was suffering from disgrace and humiliation inflicted upon her by the conduct and actions of her husband, and was mentally and physically incompetent to properly realize the importance and meaning of entering into an agreement of sale for this property; that there were certain representations made to her by the complainant and his representatives that if this defendant desired to repudiate the agreement of sale she was privileged to do so at any time within two weeks thereafter; and that within said two weeks after the signing of the agreement of sale this defendant did

tender and offer the return of the $50 mentioned in said agreement, which was refused by the complainant, and for that reason admits having refused to comply with the terms of the agreement. She denied that there was any intent on her part to hinder complainant from enforcing his agreement, and admitted having conveyed the property in question to her former husband, Edward Mathis, and averred that the conveyance to him was a part of an agreement between them in their property settlement, and that at the time of such conveyance to Edward Mathis he likewise quitclaimed any and all right, title, and interest which he claimed in the property in question, and other property, as more fully appears in the bill of complaint in the divorce case.

In and by an amended answer, subsequently filed, defendant Rose Mathis averred that in the said representations made to her by the complainant, at the time she signed the agreement, it was stated that, if she desired to rescind the memorandum of sale, she was privileged to do so at any time within two months thereafter, and she averred that within the said two months after the signing of said memorandum she did tender and offer the return of the $50 therein mentioned, which tender was refused by the complainant; that complainant never claimed to have bound himself to take the property on the terms contained in said memorandum; and that it was specifically agreed and understood that unless said injunction was dissolved and this defendant's title entirely cleared within two months from September 24th, 1910, said memorandum was not to become operative, and neither party thereto was to be bound thereby. And she averred that said injunction was not dissolved, nor was this defendant's title cleared within said two months. She denied that on September 24, 1910, or at any time thereafter, before she informed said complainant of her intention not to sell said property, did complainant bind himself in any way or form to buy said property on the terms set forth in said memorandum; that, if there was any acceptance by complain-

ant, it was subsequent to the date of the signing of the agreement, and after she had tendered back the money received by her from complainant; that the agreement signed by this defendant was written in longhand writing, of which there was no copy, and such original and only memorandum of sale, at the time of the signing, was taken by the complainant after this defendant had signed the same, but there was no delivery thereof, at any time by this defendant; and that the complainant was the only person of the parties to the memorandum to have the same in his possession, no duplicate or copy having been given to this defendant.

The separate answer of defendant Edward Mathis alleges that he does not know what were the terms of the agreement; he denies that Rose Mathis was the sole owner of the property; avers that the conveyance to him was for the purpose of securing this defendant for the interest which he had in the property here involved, and also in other pieces of property which were standing in the name of said Rose Mathis as set forth in his bill of complaint for a divorce, to which he prays reference, and he makes reference to the same notice of *lis pendens* as referred to by the other defendant. After the filing of a general replication, the cause was heard upon the pleadings and proofs taken in open court. The files in the divorce case were offered in evidence by defendants. They showed that the bill was sworn to September 17, 1910, that it was filed September 19, 1910, and an injunction was served upon Mrs. Mathis September 20, 1910, restraining her from selling this property. Upon May 12, 1911, a stipulation was filed withdrawing the bill of complaint, and on the same day an order was made by the circuit judge permitting the bill of complaint to be withdrawn.

Defendant Edward Mathis offered no evidence to support his claim of ownership of the property here involved. It did appear, however, that there was an agreement whereby Mrs. Mathis was to pay Edward an additional

sum of $1,100, and to secure him by executing a satisfactory conveyance of the property here involved to him, to secure him the payment of said $1,100; that she gave him a deed which was never recorded, and Edward Mathis executed a quitclaim deed to the son, and the latter paid the $1,100. This was April 29, 1911, and Mrs. Mathis gave a deed to her son as security for the $1,100. The bill of complaint and a *lis pendens* in the instant suit were filed April 28, 1911. This cause was heard May 16, 1912. There was much conflict in the evidence upon the following subjects:

Upon what date the memorandum of agreement was signed by Mrs. Mathis (by her mark), she and some of her witnesses claiming that it was signed on Sunday, which claim was denied by complainant and other witnesses. We have inspected the original instrument. It originally bore date September 24, 1910, but the figures "24" have been changed to "26." We take notice of the fact that September 24, 1910, was Saturday, and September 26th was Monday. After reading the record, we agree with the trial court in reaching the conclusion that the transaction did not take place on Sunday.

Also, there was a sharp conflict as to whether, as matter of fact, it was orally agreed and understood by and between the parties that there was to be no contract, or deal, or binding transaction, of any kind, unless defendant Rose Mathis could give a clear title in two months.

There was also conflict in the evidence as to when complainant added and signed the sentence at the bottom of the memorandum, reading as follows: "I hereby agree to all above terms and conditions. Isaac Smith"—it being the claim of complainant that it was done at the time Mrs. Mathis made her mark thereon, and the defendant Mrs. Mathis denying this, and claiming that it was added later. It is undisputed that the words were on the paper when it was produced at the hearing. It is also undisputed that complainant paid Mrs. Mathis $50 at the time

she put her mark to the paper, and that complainant took the paper, and that Mrs. Mathis did not retain any copy or duplicate. It is disputed when Mrs. Mathis offered or tendered back the $50; she testifying and claiming that she did it within two months, and complainant claiming and testifying that it was six months after the date of the paper. Upon the hearing of the cause the circuit judge dismissed the bill of complaint with costs to the defendant Rose Mathis. It may be well for us to state the reasons therefor, as given by the trial judge. They were as follows:

"I am not satisfied from the proofs in this case that complainant has established his right to what he desires by a fair preponderance of proofs, but I do determine as facts in the case that at the time this deal was entered into and at the time this paper writing was executed by the defendant, it was agreed and understood between the parties that, unless a good and perfect title could have been given by Mrs. Mathis to the complainant in this case, this deal, as it is called, should be declared off within * * * two months. It does appear in the proof in this case that an injunction of this court prevented for some considerable time thereafter a performance of that part of her bargain by her, and, that being so, then the deal did under the terms of the deal come to an end. If that part of the contract can be read into the contract, and it seems from the case that has been read and cited here that it can—in other words, where the deal itself is contingent upon the happening of a certain event, or the converse of it, the nonhappening of a certain event, it makes little difference, so far as the principle is concerned, whether or not she will get the property clear, or whether the property will be clear. The understanding on her part was simply to perform the terms of this bargain if the property should be clear of the incumbrance of the mortgage. * * * I will state this, that I do think these cases apply. Now I am inclined to think that they do apply with full force, and even if you take the paper writing itself, by itself, and alone, that it shows that it lacks the mutuality that makes the contract binding upon both parties."

The complainant has appealed, and the two important

questions presented are: (1) Was the learned circuit judge right in admitting and considering evidence that it was agreed by parol at the time the memorandum of agreement was entered into, that unless a good and clear title could be given by Mrs. Mathis to complainant within two months the deal should be called off? (2) Taking the paper writing by itself, does it lack that mutuality necessary to make the contract binding upon both parties? And this may involve the question whether it was necessary for the complainant to sign the paper to render it enforceable.

1. Upon the first proposition counsel for defendant Rose Mathis urge that the circuit judge did not err in considering this testimony, and they rely upon *Cleveland Refining Co.* v. *Dunning*, 115 Mich. 238 (73 N. W. 239), and *Ada Dairy Ass'n* v. *Mears*, 123 Mich. 470 (82 N. W. 258), and certain Federal cases. In the first case cited it was held by this court that parol evidence that a written order for the purchase of goods was with the understanding that it was to be obligatory only in case the purchaser should be allowed to cancel a similar order previously given to another person was not inadmissible as varying the terms of a written contract. In that case Justice Hooker said:

"The making and delivering of a writing, no matter how complete a contract according to its terms, is not a binding contract if delivered upon a condition precedent to its becoming obligatory. In such case it does not become operative as a contract until the performance or happening of the condition precedent. Proving this is not an attempt to vary the terms of a writing admitted to have been executed and delivered with the understanding that it should take effect."

An examination of the above cases will disclose that neither of them involved any question of the statute of frauds.

Complainant's counsel claim that in the above-cited cases the arrangement sought to be shown was a condi-

tion precedent to the contract coming into existence at all and might be shown by parol evidence; that this holding does not apply to the facts of a case like the present one, where the contract was to take effect at once, and where money was paid and accepted upon the contract at the time of its being made, and where it was at most a condition subsequent; and they cite *Mail & Express Co.* v. *Wood*, 140 Mich. 505, 516 (103 N. W. 864, 869), where this court said:

" The defendant's counsel seeks to justify the admission of the testimony and the direction of a verdict on the ground that by the terms of the oral agreement the order was not to become obligatory until the goods were distributed, on the authority of *Cleveland Refining Co.* v. *Dunning*, 115 Mich. 238 [73 N. W. 239]. We do not think the proofs bring this case within the ruling of this court in *Cleveland Refining Co.* v. *Dunning, supra.* In that case the defendants signed an order for 10 barrels of oil upon the understanding that it was to be obligatory only in case the defendants should be allowed to cancel a similar order previously given to the Standard Oil Company. There was a clear understanding that the cancellation of the one order was to be a condition precedent to the taking effect of the other."

In the instant case the memorandum of the agreement was clearly within the terms of the statute of frauds (section 9511, 3 Comp. Laws, 4 How. Stat. [2d Ed.] § 11395), and was required to be in writing. We shall cite cases upon the next point to be considered, to the effect that, where the vendee has accepted such a memorandum, it must, in the absence of fraud, be taken as conclusive, not subject to variation by parol evidence, and, if it contains all of the requisites of a valid land contract, it is binding on both parties. Evidence is not admissible, which, conceding the existence and delivery of the contract or obligation, and that it was at one time effective, seeks to nullify, modify, or change the character of the obligation itself, by showing that it is to cease to be effective, or is to have an effect different from that stated therein, upon certain

conditions or contingencies, for this does vary or contradict the terms of the writing. 17 Cyc. p. 643, citing many cases, including *Central Sav. Bank* v. *O'Connor*, 132 Mich. 578 (94 N. W. 11, 102 Am. St. Rep. 433), which fully supports the doctrine.

We are of opinion that the circuit judge erred in holding that the case of *Cleveland Refining Co.* v. *Dunning, supra*, applied here, even if the facts were as he found them to be.

2. Taking the memorandum by itself, even if not signed by complainant, at the time it was delivered to him, does it lack that mutuality necessary to make the contract binding upon both parties?

This court has frequently held that, under our statute above referred to, every contract for the sale of lands is void, unless the contract, or some note or memorandum of it, is in writing, and is signed by the vendor, or his agent lawfully authorized by writing. It does not require the purchaser to sign the agreement, and, if he accepts it, he is liable on the written contract, though his own assent is verbal. *Holland* v. *Hoyt*, 14 Mich. 238; *Scott* v. *Bush*, 26 Mich. 418–420 (12 Am. Rep. 311); *Burke* v. *Wilber*, 42 Mich. 327 (3 N. W. 861); *Mull* v. *Smith*, 132 Mich. 618 (94 N. W. 183); *Miller* v. *Smith*, 140 Mich. 524 (103 N. W. 872). In the case last cited Justice McALVAY, speaking for this court, said:

" The suit was brought upon the written agreement signed by defendants, above set forth. The writing is unambiguous and complete, and requires no extraneous evidence to explain its meaning. It is fundamental that no oral evidence to change or vary its terms would be admissible. As far as this record shows, the writing was signed by defendants with full knowledge of its contents. It is a clear agreement for the sale of certain real estate, properly described, for a certain price, upon certain terms, and acknowledges the receipt of part payment. Plaintiff, having accepted this agreement by making part payment, became a party to it. In the case of *Mull* v. *Smith*, 132 Mich. 618 [94 N. W. 183], where, in relation to a mem-

orandum for the sale of real estate, the questions here raised were discussed, the court said:

" 'When the memorandum of the oral contract is in writing and signed by the vendor, it is not the contract, but a memorandum, which makes it binding upon him if accepted by the vendee. This is valid evidence of the contract. But can it bind him if not binding upon the vendee? The statute differs from the English statute, which binds the one sought to be charged only when he has signed it. Under such a statute it may be doubtful if, relying solely upon the memorandum signed by himself, the vendor could enforce or recover damages for the breach of the contract. * * * But whether this is so or not, we cannot doubt that, before either party can make the contract the basis of a suit or action, the element of mutuality must be discernible. See *Wilkinson* v. *Heavenrich*, 58 Mich. 574 [26 N. W. 139, 55 Am. Rep. 708]. * * * It being admitted that the vendor has made and the vendee accepted such a memorandum, it must, in the absence of fraud, be taken as conclusive, not subject to variation by parol evidence, and, if it contains all of the requisites of a valid contract, it is binding on both; otherwise not.' "

See, also, *Orr* v. *Kenny*, 150 Mich. 159 (114 N. W. 228); *Adams* v. *Hotel Co.*, 154 Mich. 198 (117 N. W. 551, 19 L. R. A. [N. S.] 919).

Upon this branch of the case defendants' counsel cite the following cases: *Wilkinson* v. *Heavenrich*, 58 Mich. 574 (26 N. W. 139, 55 Am. Rep. 708); *Wardell* v. *Williams*, 62 Mich. 50 (28 N. W. 796, 4 Am. St. Rep. 814); *Bowen* v. *Lansing*, 129 Mich. 117 (88 N. W. 384, 57 L. R. A. 643, 95 Am. St. Rep. 427). In *Wilkinson* v. *Heavenrich, supra,* the decision was based upon another section of the statute of frauds which requires the writing to be signed by the parties to be charged therewith. We have sought to show that, in the case of the sale of real estate, the statute only requires the contract or memorandum to be signed by the vendor. In *Wardell* v. *Williams, supra,* the paper differed so widely from the one in the instant case that it is readily distinguished. It was a mere offer, never accepted and upon which nothing had been paid. It provided that a mortgage was to be given by the purchaser—which distinguishes it from the instant case, for

here the vendee was to give his personal promise to pay the purchase price. In *Bowen* v. *Lansing, supra*, it was held that in equity, under a land contract, the land belongs to the vendee, but it was not held that his personal promise to pay the purchase price was an interest in land, or that the legal title was in him, as it would be in case of a deed to him and a mortgage back to secure the payment of a purchase price.

We think that the memorandum of agreement, when accepted by complainant, became a binding contract upon both parties. We attach no importance to the fact that a copy, or duplicate of the memorandum, was not retained by Mrs. Mathis. It was forthcoming at the hearing, and there is no question that it was signed, and its contents understood by her. We cannot agree with defendants' counsel when they say:

"It must be conceded in this case that, had Mrs. Mathis desired to make Smith take the property, she could not have done so."

At the time of the filing of the bill in the instant case, Mrs. Mathis held the title to this property, and the injunction had ceased to be of force. Subsequently, the title went to the son as security for $1,100.

We are of opinion that the equities of the case are with complainant, and that he is entitled to have specific performance of the contract as prayed for in his bill of complaint. The decree should authorize complainant to pay off the incumbrance, and have credit therefor upon the contract.

The decree of the circuit court is reversed, and a decree for complainant will be entered in this court in accordance with this opinion. The complainant will recover his costs in both courts to be taxed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.