TATTAN *v.* BRYANT.

1. VENDOR AND PURCHASER — OPTIONS — LAND CONTRACTS — CON-
STRUCTION OF CONTRACT.

> A memorandum of agreement relating to the sale of land
> which contains no obligation to purchase and makes ref-
> erence to a "prior option," with the terms of which both
> parties are familiar, and provides that a deed will be given
> on compliance with the "terms of this option," and that
> on failure to make the stipulated payments the instru-
> ment will be canceled, constitutes a mere option and not
> an agreement for the sale and purchase of land, even
> though the parties are designated as seller and purchaser
> and other language more properly belonging in an agree-
> ment for sale and purchase is used, since the absence of
> an obligation to purchase is the distinctive characteristic
> of an option contract.

2. SPECIFIC PERFORMANCE—LAND CONTRACTS—EXTENSION OF TIME
—CANCELLATION—NOTICE.

> Specific performance of a land contract, in which time of
> payment is made the essence of the contract, will not be
> granted in favor of the contract purchaser where, although
> the time of payment is extended a few days in order to
> allow the purchaser to have certain restrictions as to
> the use of the property removed, and, on the day to which
> time of payment was extended, she called at the vendor's
> office several times and was ready to make the payment
> due, she made no tender to, and left no notice with, those
> in charge of the office, and had not obtained the removal
> of the restrictions, and did not intend to, and shortly
> thereafter received notice of termination of the agreement
> from the vendor and took no steps in the matter until
> about five months later when she filed her bill, having in
> the meantime learned that a purchaser was about to re-
> lieve the property of its restrictions.

3. SAME—RIGHT OF ACTION—DISCRETION OF COURT.

> Specific performance of a land contract will not be granted
> as a matter of right, but in the discretion of the court.

4. SAME—EVIDENCE—SUFFICIENCY.

> Evidence *held,* insufficient to sustain the burden of proof

upon plaintiff, the purchaser, in an action for specific performance of an agreement for sale of land.

Appeal from Wayne; Perkins, J., presiding. Submitted April 16, 1917. (Docket No. 59.) Decided December 27, 1917.

Bill by Catherine Tattan against John A. Bryant for the specific performance of an alleged land contract. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*John C. Shields* (*N. C. Bigelow* and *Arthur E. Fixel*, of counsel), for plaintiff.

*Clark, Emmons, Bryant & Klein*, for defendant.

STEERE, J. This litigation arises out of the following instrument in writing, which plaintiff contends is a land contract, and seeks to enforce specific performance of, while defendant insists it is but a forfeited option, and, even if construed as a contract, defaulted and not enforceable:

"Memorandum of agreement, made and entered into this 13th day of April, A. D. 1914, by and between John A. Bryant, of the city of Detroit, Wayne county, Michigan, hereinafter known as the seller, and Catherine Tattan, of the same place, hereinafter known as the purchaser: In consideration of the sum of one dollar this day paid to the seller by the purchaser herein named, said seller does hereby agree to sell to said purchaser the following described property, to wit: The Woodward avenue frontage, being the westerly one hundred feet (100) of lots B and two and the north one-half of the vacated portion of Pallister avenue of Chandler avenue subdivision of part lot five (5) of subdivision of quarter section 57, ten-thousand-acre tract, excepting and reserving an easement or right of way on a strip of land ten (10) feet in width from the easterly end of said property, as provided in a certain deed to John Kaiser, Sr.; also including ease-

ment and right of way over southerly ten (10) feet of land heretofore deeded to said Kaiser, Sr., on the following terms, to wit: For the sum of twenty-four thousand two hundred dollars ($24,200) payable five hundred dollars ($500) on the signing of this agreement and the balance of twenty-three thousand seven hundred dollars ($23,700) as follows: Twelve thousand two hundred dollars ($12,200) or more payable thirty days (30) from the date hereof and the balance of eleven thousand five hundred dollars ($11,-500) as follows: Three thousand dollars ($3,000) one year from date; three thousand dollars ($3,000) two years from date and the balance of five thousand five hundred dollars ($5,500) three years from the date hereof, with the privilege of paying any and all sums at any time after this date, with interest at 6 per cent. per annum on any sums due and unpaid.

"It is understood and agreed between the parties that E. M. O'Roark, real estate agent, who held a prior option on this property, dated March 10th, 1914, which said option has expired, is to receive from the first payment of twelve thousand two hundred dollars ($12,200) the sum of seventeen hundred dollars ($1,-700), which amount is to be in full of all claim on his part for commission or otherwise, against either of the parties hereto, or against said property; and said E. M. O'Roark has this day signed this agreement as evidence thereof. It is provided further that if said purchaser shall fail to pay the sum of twelve thousand two hundred dollars ($12,200) thirty days from the date hereof, as agreed, then said payment of five hundred dollars this day made shall be retained by the seller as liquidated damages and this agreement shall at once be canceled and the purchaser shall forfeit any interest she may have or may claim in said premises.

"It is understood and agreed that the purchaser has examined Burton abstract, that the title is satisfactory and that upon the completion of the terms of this option and payment of the purchase price for said property, she shall receive a deed warranting said title against the acts of the seller and a Burton abstract as now brought down and certified.

"In witness whereof, the parties have hereunto set

their hands and seals the day and year first above written.

"JOHN A. BRYANT.
"CATHERINE TATTAN.
"E. M. O'ROARK."

The only other writing of any significance connected with this instrument and what was done in relation to it is as follows:

"MAY 15, 1914.

"MRS. CATHERINE TATTAN,
  "51 Massachusetts Street,
    "Detroit.

"*Dear Madam:* I am writing to advise you that in view of the fact that you have defaulted in the terms of the agreement dated April 13, 1914, covering purchase by you of property owned by me at the corner of Woodward avenue and Chandler, I am exercising my rights under the terms of that agreement in declaring forfeited to me the $500 paid thereon on April 13, 1914, and I will now proceed to dispose of said property without being limited by the April 13th agreement.

"You came to this office on May 13th, on which date a payment of $12,200 was due, and stated that you were unable to make the payment and asked for a ten days' extension of time. This I was unable to give you and so stated to you. Inasmuch as you admit that you are unable to carry out the terms of the agreement, the deal is therefore declared off.

"Yours very truly,
"JOHN A. BRYANT."

The $500 payable "on the signing of this agreement" was then paid as provided. Plaintiff never paid or tendered the $12,200 made payable 30 days later. She called upon defendant at his office on May 13th and asked for an extension of time to make this payment, which she claims and he denies was orally granted, until the following Monday. Plaintiff testified that she was accompanied by her attorney, whom she took with her, thinking perhaps an extension of time would be granted, and if any writing was to be

done, etc., he would be there to look after her interests. With at first some misgivings as to the date, her attorney concluded that the interview with defendant in which he participated was on May 13th, and testified in part:

"As to the extension he absolutely refused to give it, but he said he would not do anything for a certain length of time. * * * I had an impression that the matter would stand as it was until over Monday."

Defendant fixes this interview on the following day (May 14th) and the second visit of plaintiff when she returned with her counsel to further press the matter, at which time, though answering to their persistent inquiries that he was not going to sell the property before Monday and they could see him any time they wished, he asserts that he positively refused to extend the stipulated time, which is supported by the testimony of his woman office assistant, and the interview finally ended by the attorney becoming irritated, and as he left intimating a purpose to "fix" defendant, which intimation was the occasion of sending the letter of May 15th to make clear in writing his position.

Defendant was a member of the contracting firm of Bryant, Detwiler & Co., and testified that his sole business was that of contracting, although he had invested money in real estate and owned the property in question for 4 or 5 years; it being his first purchase after his home. It was burdened with building restrictions which, under changed conditions and the invasion of business in that locality, tended to impair its market value. Plaintiff had been in the real estate business in Detroit for 15 years, handling many real estate transactions both as agent and for herself, and, as she testified, was familiar with the complications arising in that part of the city over such restrictions; knew the land which she had dealt for at the price of restricted property would be much more valuable with

the restrictions removed; expected to effect their removal within the 30 days before her second payment fell due, and intended to make her profit on the deal through being able to sell it as unrestricted property. One of the embarrassments she met in her campaign of removal was the reservation of a private easement or 10-foot right of way once deeded to John Kaiser, as appears in the description of the property. Of about 200 residents whose written consent was required to relieve the property from restrictions she had only secured some 12 or 14 signatures up to May 13, 1914, but claimed she had assurances that if the city would accept and adopt the 10-foot easement as a public alley she could obtain releases from the rest. She had accordingly been working with the city authorities to get the public alley through, and states she "was getting near to the council" when the date for the $12,200 payment arrived, and had an appointment with the legal representative of the city for the Monday following, which gave promise of favorable results. Her understanding that a purchase of the property by her was optional and her attitude in regard to the proposed public alley she hoped to secure are indicated in the following questions and answers on her cross-examination:

"*Q.* So you wanted further time to get a public alley there, is that right?

"*A.* No, it would be satisfactory to the city if they would accept a 10-foot alley.

"*Q.* Then, of course, you didn't want the property if they didn't?

"*The Court:* If they didn't what?

"*Q.* If the city would not accept a 10-foot alley, then what?

"*A.* Then I presume I was up against it to do anything with the property.  *  *  *

"*Q.* Unless you could get the city to accept that 10 feet you would have to give up the property?

"*A.* Yes, that was as far as closing up with Mr. Bryant. I was to see Mr. L. that afternoon at 4 o'clock. I told him if the city would accept the 10 feet for a public alley, then I was going to go ahead with my deal with Mr. Bryant.  *  *  *

"*Q.* Even if you could not get the alley accepted as a 10-foot alley, you were going to close?

"*A.* I was going to lose my $500."

Contending that the instrument in question is a present agreement between the parties for sale and purchase of land, and not a mere unilateral option contract giving a right to elect to purchase on or before some future date, counsel for plaintiff stress certain of its phraseology more properly belonging to, and commonly found in, an ordinary land contract, pointing out that the "memorandum of agreement" is signed by both parties, who are designated throughout as "seller" and "purchaser;" that, first naming a nominal consideration of $1, it specifically provides "said seller does hereby agree to sell to said purchaser the following described property, to wit," etc., for the stated price of $24,200, payable "five hundred dollars ($500) on the signing of this agreement and the balance as follows," etc., and that in case of default "said payment this day made shall be retained by the seller as liquidated damages." It is also urged that defendant so construed the document in his notice that she had "defaulted in the terms of the agreement covering purchase by you of property owned by me," and also admitted in his answer the allegation in plaintiff's bill that he offered to sell and convey to her the property in question, and she "agreed to purchase" the same.

On the other hand, we find no provision in the document by which she agrees to purchase; it makes reference to a "prior option," with the terms of which both parties were familiar, and it provides she shall receive a deed on compliance with the "terms of this option."

Having paid the $500 upon execution and delivery of the instrument, nothing further is imposed upon her by the instrument. She was free to perform and enforce it, or forfeit the payment and abandon it, whereupon, by its own limitations, it "shall at once be canceled." Absence of an obligation to purchase is the distinctive characteristic of an option contract. James on Option Contracts, § 105.

It is evident that the scrivener of this instrument, while naming it an option, clouded its clarity by adopting in part phraseology appropriate to an executory land contract, but in that aspect it is deficient for want of mutual executory obligations while it does contain the essentials of an unilateral option contract, giving the right to purchase within a limited time without imposing any obligation to purchase.

But even yielding to plaintiff's contention that under the conflicting wording of the agreement and defendant's concessions as to its import the question of specific performance of a land contract is before the court, we are in harmony with the trial court from that viewpoint. Plaintiff was familiar with and experienced in the difficulties attending attempts to enhance values of property in that locality by removing restrictions; she was interested in the "prior option" held by O'Roark, also a real estate agent, with whom she co-operated. During the life of that option she secured a customer who would buy the property on condition that they would remove the restrictions, which they attempted to do, but were unsuccessful, following which she secured this instrument, giving her 30 days longer in which to continue her efforts, paying $500 on it, which she states she was going to lose if she could not get the public alley accepted; for her anticipated profits on the deal were contingent on being able to sell it as unrestricted property. Her statements as to what she did or could do, and when, and

her ability to meet the payment on May 13th, or the following Monday if it was insisted upon, are in many respects confusing and self-contradictory. In apparent explanation of certain manifest inaccuracies, she said:

"The only thing I have to depend on is my memory, and I have so much business that that fails me once in a while. I don't keep any books or records."

Whatever else may be claimed for it, time limit was made of the essence of this contract in clear and unequivocal terms, and she well understood it. The most she claims is that the time was extended by parol, without consideration, from May 13th (Wednesday) until the following Monday. She testified that she called at defendant's office two or three times that day, and did not find him in; that she had part of the money necessary to pay the $12,200 with her, and had made arrangements to borrow the rest from a saloon keeper, and could have procured it by calling him up and notifying him everything was all right. She made no tender to, and left no notice with, those in charge of defendant's office, had not then secured removal of the restrictions on the property, and stated she did not subsequently make any further effort to do so. If not fully advised before, she shortly thereafter received notice in writing of defendant's position and took no steps in the matter until November 25, 1914, when she filed this bill, after, as testimony tends to show, she learned that a purchaser of the property was in a fair way to relieve it of the restrictions which impaired its value.

Accepting plaintiff's testimony as true, the special features and incidents of this case are not impelling to the enforcement of a discretionary remedy which she is not entitled to as a matter of right; but beyond this, upon the issues of fact which are essential to the application of this discretionary remedy, we cannot

disagree with the conclusion of the learned circuit judge that plaintiff has failed to sustain the burden of proof.

The decree is affirmed, with costs to the defendant.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.