### OGOOSHEVITZ v. SAMPSON.

1. FRAUDS, STATUTE OF—CONTRACTS—LAND CONTRACT—VALIDITY.
A memorandum agreement for the execution of a land contract containing all of its essential elements, viz., property, price, terms, and limit of time for full performance, signed by the vendor, *held*, to comply with the requirements of the statute of frauds, and to be valid and binding upon the parties.

2. EVIDENCE—PAROL EVIDENCE—WRITTEN CONTRACTS—CONTRADICTING WRITTEN CONTRACT.
In an action for damages for the breach of a memorandum agreement to execute a land contract, complete in itself, where it specified no necessary or desired feature of a land contract left open for future agreement, it was error for the trial court to admit oral evidence contradicting its provisions, or that it did not contain all agreements of the parties.

Error to Wayne; Mandell (Henry A.), J. Submitted April 20. 1920. (Docket No. 103.) Decided July 20, 1920.

Assumpsit by Isaac Ogooshevitz against George L. Sampson for breach of a land contract. Judgment for plaintiff for an insufficient amount. He brings error. Reversed.

*Friedman & Meyers,* for appellant.

*Welsh, Bebout & Kahn,* for appellee.

STEERE, J. Plaintiff brought this action in assumpsit to recover damages from defendant for breach of a land contract. He recovered a verdict and judgment in the circuit court of Wayne county in the sum of $260 which he brings to this court for review on assignments of error claiming an inadequate verdict resulted from prejudicial admission of incompetent testimony and other errors.

The following writing concededly signed by defendant resulted from negotiations between the parties on the date shown:

"DETROIT, MICH., March 2, 1916.

"Received of I. Ogooshevitz $100 as first payment on lot known as westerly 18 feet of lot (7) seven and easterly 34 feet of lot 8 being 52 feet on the south side of Palmer avenue west of Beaubien street for the sum of $5,720, terms as follows: $620 more on delivery of land contract or deed and the remaining $5,000 on or before (1) one year from the date of contract, purchaser to receive an abstract brought down to date before contract is made to show free and clear title. Six per cent. interest.

"GEORGE L. SAMPSON."

The paper was copied at the time by plaintiff's nephew from a similar writing defendant had just entered in a book which he kept. After observing some slight variations in the copy which he regarded as immaterial defendant added the last sentence, "six per cent. interest," and signed it. Plaintiff then paid defendant $100 as first payment on the described lot

and subsequently received from him an abstract of the property. They met at the office of plaintiff's attorney to close up the transaction, and defendant produced a land contract for the property drafted in harmony with the original writing, with a clause added reserving five feet of the lot along its east side as part of a 10-foot driveway, giving plaintiff an easement to use the same. Plaintiff objected to this clause, his attorney informing defendant that their preliminary contract contained no such provision, but defendant declined to proceed further without such reservation. Several letters were thereafter sent defendant by plaintiff's attorney advising him that plaintiff was ready and willing to perform on his part according to their written agreement and demanding performance by defendant. Finally, on August 4, 1914, he wrote him that plaintiff would allow defendant to reserve the 5 feet for a driveway, and pay him for the remaining 47 feet proportionally, with a demand for performance of their agreement and threatening legal proceedings if defendant failed to comply within a stated time. Defendant did not comply. The property being in the name of defendant's wife, precluding enforcement of specific performance, this action was begun on September 9, 1916. The parties thereafter negotiated an adjustment by which the agreement was to be carried out with defendant's clause for a driveway conceded as he wished without reduction of purchase price.

Defendant then had a contract prepared in duplicate by his own attorney, which contained in legal form and phraseology the substance of the original writing of March 2, 1916, and a provision relative to the driveway upon which he had insisted. As prepared it was acceptable to plaintiff and the parties met at defendant's home where they signed it, defendant signing for his wife as he testified. The pro-

duced instrument which they concededly signed is dated September 29, 1916. Plaintiff then paid defendant the $620 as the contract specified. Shortly thereafter defendant's attorney came in and a controversy arose between the parties as to a building restriction upon the property, which defendant claimed had been agreed upon and should be inserted in the contract, but which plaintiff and his nephew, who had participated in the negotiations and signed the contract as a witness, strenuously denied and objected to any change in the contract. Plaintiff claimed his copy of the contract was handed him when it was signed, and was in his pocket when the attorney arrived, to whom he handed it when requested. Defendant claimed both copies yet lay upon the table. Be that as it may, it is undisputed that the papers were signed and payment made when the attorney arrived and he thereafter, against plaintiff's protest, inserted in the contract a provision that "the front part of the lot facing on Palmer avenue shall be used for dwelling or apartment house purposes." Plaintiff insisted upon the contract as drawn and signed without the restrictive clause defendant's attorney had inserted, which was refused him. He then erased his signature from the changed contract, or had it done, and received back the $620, but refused the $100 paid on the agreement of March 2, 1916.

The block containing this lot was without restrictions, and plaintiff contended he had so purchased the lot from defendant, who on his part claimed plaintiff had agreed from the beginning to the restriction he sought to impose. Although testifying he was experienced in real estate transactions and drafting papers in relation thereto, he stated as his reason for not putting the claimed restriction in the agreement before was, "I didn't think there was any question about it."

Much of this record is devoted to testimony as to talks, negotiations, understandings and oral agreements between these parties upon that subject, permitted by the court against timely protest and saved objections of plaintiff's counsel. At close of the testimony plaintiff's counsel moved the court to strike out all evidence as to conversations and verbal agreements between the parties prior to or at the time the writing sued upon was signed, and to direct a verdict in plaintiff's favor for whatever damages the jury found he had suffered, filing written requests to the same effect. These were denied and the case submitted to the jury in a lengthy charge permitting them to take into consideration such testimony. A motion was thereafter made for a new trial upon the ground that the verdict was inadequate, owing to refusal of plaintiff's request to charge on the subject of damages, and prejudicial admission of testimony to vary the terms of the written agreement.

In charging the jury the court read and apparently took as a text the following excerpt from *Mull* v. *Smith*, 132 Mich. 618: '

"Our statute does not make all contracts for the sale of land void. It excepts those where the contract itself or some note or memorandum thereof is in writing and signed by the vendor. When the contract itself is in writing and signed by both parties, the writing is the contract. When the memorandum of the oral contract is in writing and signed by the vendor, it is not the contract, but a memorandum, which makes it binding upon him if accepted by the vendee."

In that case plaintiff sued to recover $100 which he had paid on a land purchase, evidenced by a scant memorandum which defendant had signed and the question involved was whether it contained sufficient essentials of a land contract to take it out of the statute of frauds. The court held that it did and further said of it:

"Here, then, was a valid contract for the sale of land. Defendant is proven to have made it by his writings signed and delivered. The plaintiff is shown to be a party to it by oral proof of his acceptance of defendant's memoranda, and payment of $100 upon it. He cannot recover the $100 as money paid for his use."

The attitude of the court in admitting and submitting to the jury the oral testimony objected to is, we think, fairly disclosed by the following extract from the portion of the charge dealing with the subject:

"The plaintiff has asked me to direct you to return a verdict in favor of the plaintiff for such a sum in dollars and cents as you may find that he was harmed or injured by the default as he claims it of the defendant. That I decline to do. I decline to do it because of the rule that I have read to you, and also because of the position taken by the defendant. I charge and instruct you as a matter of law therefore that these two papers taken together and properly construed from a legal point of view are clearly memoranda indicating that the parties would get together and make a contract; that the contracts were not construed or considered by either the plaintiff or the defendant as a complete land contract or a land contract complete in its terms and therefore it will be for you to determine whether anything was said between the plaintiff and the defendant at the time these memoranda were signed and indicated what the contents of the paper would be that should be executed as a land contract between the plaintiff and the defendant."

This memorandum of March 2, 1916, is more complete in essentials than that held a valid contract in the *Mull Case*. It was given to and accepted by plaintiff manually and orally, by payment according to its terms and in writing by offer to comply with all its requirements with demand of performance on defendant's part. It contained the essential elements of a valid land contract. Property, price, terms, and limit of time for full performance are definitely stated. It

specifies no necessary or desired feature of a land contract left open for future agreement. Any agreement to enlarge or restrict its provisions would be an agreement to alter it, which cannot be done by a previous or contemporaneous oral understanding, or contract.

Apparently the court was led to the view that it was not a binding contract by the reference in it to a contemplated future contract which the court instructed the jury indicated that it was "not construed or considered by either the plaintiff or the defendant as a complete land contract or a land contract complete in its terms." Whatever the parties may have considered or said upon the subject, they did not specify in writing the terms or particulars as to which they thought it incomplete, and it was error for the court to receive oral evidence contradicting its provisions, or that it did not contain all agreements of the parties. *Smith* v. *Mathis*, 174 Mich. 262; *Ogooshevitz* v. *Arnold*, 197 Mich. 203; *Walsh* v. *Oakman*, 199 Mich. 688. These cases and others to which they refer fully discuss and dispose of this question. In each of the *Smith* and *Arnold* Cases the memorandum of agreement held to be a valid land contract makes reference to a future contract, as in the instant case.

Both parties to this litigation claim to be experienced operators in real estate in the city of Detroit. The avidity and volubility with which they directly contradict and in effect accuse each other of wilful perjury as to matters of understanding and claimed parol agreements relating to this transaction is a sermon on the wisdom of the statute of frauds and its strict application. Opening the door for such incompetent testimony to dominate the controversy and divert the attention of the jury prejudicially tended to confusion of the legitimate issue. It put into the case an illegitimate element or issue for the jury to debate and compromise on. The court gave the jury no in-

structions as to the $100 which plaintiff paid defendant on the contract. What basis they made an award of $260 damages on is mere conjecture. It is not in harmony with the testimony of either side, and a compromise verdict is indicated, of which there is plausibility in the suggested conjecture that the relative value of the testimony of the respective parties as to their oral agreements figured as a test.

The judgment is reversed, with costs to plaintiff, and retrial granted.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.