## PANGBURN *v.* SIFFORD.

1. CONTRACTS—WHEN BINDING—NEED NOT BE IN WRITING UNLESS REQUIRED BY LAW.

   When the minds of the parties have met, when an offer has been made by one and accepted by the other, a contract is thereby entered into, and unless required by some positive law, it need not be reduced to writing in order to be binding upon the parties.

2. FRAUDS, STATUTE OF—VENDOR AND PURCHASER—VENDEE'S OBLIGATION TO PAY MONEY NOT REQUIRED TO BE IN WRITING.

   Where defendant vendors offered, through their agent, to sell to plaintiff a certain city lot for $2,500 with a down payment of $25 and balance within 30 days, which plaintiff accepted and paid the $25, all the essentials of a contract were agreed to, and, on the signing of a memorandum by the vendors in compliance with the statute of frauds (3 Comp. Laws 1915, § 11977), the contract was valid and binding upon both parties, although not signed by the vendee, since all that he promised to do was to pay money and there is no law requiring such promise to be in writing to be enforceable.

As to who must sign note or memorandum of executory contract for the sale of real property or chattels within the statute of frauds, see note in 28 L. R. A. (N. S.) 680.

3. VENDOR AND PURCHASER—LAND CONTRACTS—FORFEITURE—TIME NOT OF ESSENCE UNLESS SO PROVIDED.

> Although a land contract usually provides for forfeiture in case the balance is not paid within a certain time, such provision is rarely enforced unless the contract itself makes time of the essence thereof.

4. SAME—FORFEITURE—TIME—WAIVER.

> Where the vendee in a land contract, within the time therein fixed for performance, notified the vendors' agent that he was ready to close the deal, and said agent, with vendors' knowledge and apparent consent, fixed, as the time to do so, the day after such time limit expired, performance within the time limit was waived, and forfeiture of the down payment could not be predicated thereon, although provided for in the contract.
>
> BIRD, J., dissenting.

Appeal from Cass; Des Voignes (L. Burget), J. Submitted June 21, 1921. (Docket No. 94.) Decided October 7, 1921.

Bill by John L. Pangburn against Floyd Sifford and another for the specific performance of a land contract. From a decree for plaintiff, defendants appeal. Affirmed.

*Hendryx & Mosier,* for plaintiff.

*James H. Kinnane* and *E. Bruce Laing,* for defendants.

SHARPE, J. Agreements, unless arrived at by correspondence, are the result of oral negotiations. When the minds of the parties have met, when an offer has been made by one and accepted by the other, a contract is thereby entered into. Unless required by some positive law, it need not be reduced to writing in order to be binding upon the parties.

Defendants, through Davidson, their authorized agent, offered to sell the property in question to plaintiff for $2,500, with a down payment of $25 and

balance within 30 days.    Plaintiff, after examining the premises, accepted this offer and paid the $25 to Davidson.    All the essentials of a contract were agreed to.    As thus made, however, it is declared by our statute of frauds (3 Comp. Laws 1915, § 11977) to be void "unless the contract, or some note or memorandum thereof, be in writing, and signed by the party by whom the * * * sale is to be made."    To comply with this requirement, Davidson prepared the memorandum in question and the defendants signed it.    On being so notified by Davidson, the plaintiff at once took steps to raise the money to make the additional payment.    This fact was known to defendants as the officers of the loan association visited the premises and made an appraisal thereof.    Defendants were thus informed that plaintiff regarded the transaction as a binding contract of purchase and sale.

The defense rests on the claim that plaintiff, not having signed the memorandum or otherwise accepted it in writing, could not have been compelled to perform.    In what way could he relieve himself from doing so?    All that he promised to do was to pay money and there is no law requiring such a promise to be in writing to be enforceable.    The writing does not purport to be an offer to sell real estate, requiring acceptance by the purchaser.    It is a memorandum of a sale theretofore made. · It was prepared to meet the requirement of the statute.    The contract as evidenced by the writing was not an option agreement. The $25 was not paid to secure plaintiff the option to purchase at any time within 30 days, but, as stated in the memorandum, it was "a part payment on the property."

In my opinion, a contract, binding upon both parties, was consummated and could be enforced by either party against the other.    The confusion, if there be such, in the authorities, arises from the failure to bear

in mind that there is no statute on which plaintiff could rely as a defense to a suit brought to recover the balance of the purchase price in the event of a breach on his part. A different question would be presented if the memorandum provided that he should execute a mortgage back for a part of the purchase price, as an agreement on his part to do so would be within the requirement of the statute. The question is not a new one in this court. We have many times held that the omission of the vendee to sign the memorandum does not relieve him from liability to pay the balance of the purchase price. A review of these decisions seems justified.

In the early case of *Holland* v. *Hoyt,* 14 Mich. 238, the holding is well stated in the syllabus as follows:

"There is nothing in the statute of frauds which precludes recovery for the price of land actually conveyed, whether the agreement for the price is written or verbal."

In *Scott* v. *Bush,* 26 Mich. 418 (12 Am. Rep. 311), it is said:

"The law does not require the purchaser to sign the agreement, and he is liable, therefore, upon the written contract, though his own assent is verbal."

In *Burke* v. *Wilber,* 42 Mich. 327, the court said:

"The statute of frauds, as held in *Holland* v. *Hoyt,* 14 Mich. 238, does not require the agreement of a vendee to pay purchase money to be in writing."

In *Wardell* v. *Williams,* 62 Mich. 50 (4 Am. St. Rep. 814), the court points out the distinction when the purchaser is required to do anything other than to make the payment of money. If a mortgage is to be given back as part of the purchase money, this could not be enforced as it is within the statute, being an agreement relating to lands.

In *Mull* v. *Smith,* 132 Mich. 618, the defendant submitted the following written offer:

"Forty acres for $650. Mortgage $250. Leaves balance $400. Will take cash $375 for my interest in place."

Mull accepted this orally and paid $100 down. Smith signed the following:

"I agree to give Mr. E. M. Mull a warranty deed of the Burns farm upon payment of $275, subject to mortgage of $250."

He also signed the following receipt:

"$100.00.
"Received of E. M. Mull one hundred dollars to apply on payment of Burns farm."

Some time after, Smith tendered Mull a deed and demanded payment of the $275. Mull refused to pay and, assuming that the contract was void under the statute, sued to recover the $100 paid by him. The court said:

"Our statute does not make all contracts for the sale of land void. It excepts those where the contract itself, or some note or memorandum thereof, is in writing and signed by the *vendor.* When the contract itself is in writing and signed by both parties, the writing *is* the contract. When the memorandum of the oral contract is in writing and signed by the vendor, it is not the contract, but a memorandum, which makes it binding upon him if accepted by the vendee. This is valid evidence of the contract. * * *

"Here, then, was a valid contract for the sale of land. Defendant is proven to have made it by his writings signed and delivered. The plaintiff is shown to be a party to it by oral proof of his acceptance of defendant's memoranda, and payment of $100 upon it. He cannot recover the $100 as money paid for his use."

This opinion is quoted from approvingly in the

, recent case of *Ogooshevitz* v. *Sampson*, 211 Mich. 180.

The syllabus in *Smith* v. *Mathis*, 174 Mich. 262, reads:

"Having accepted the memorandum signed by the vendor, the purchaser was bound by the instrument even if he did not, as claimed by the vendor, sign the writing until a later date."

In *Bushman* v. *Faltis*, 184 Mich. 172, it was claimed that the instrument lacked mutuality and was unenforceable because not signed or accepted in writing by the lessee. The court said:

"The failure of the lessee to sign this instrument, it is now conceded, is not material, and no point is made of it by the appellant. *Smith* v. *Mathis*, 174 Mich. 262; *Mull* v. *Smith*, 132 Mich. 618."

In *Walsh* v. *Oakman*, 199 Mich. 688, the memorandum was signed by the vendor alone. A $200 down payment was made. The vendor filed a bill to have the contract declared invalid and the record thereof removed as a cloud on his title. One of the claims of plaintiff was thus stated:

"Plaintiff further claims that the said paper is merely an offer, which he revoked before it was accepted by said Oakman; that a check was given for the down payment which was not legal tender, and therefore no payment on said land; that said paper does not satisfy the statute of frauds."

By cross bill the vendee asked specific performance. It was held "that the contract, or memorandum thereof, was sufficient to constitute a good and valid contract," and specific performance was decreed.

In *Tattan* v. *Bryant*, 198 Mich. 515, cited by Mr. Justice Bird as sustaining the claim that the agreement was an option contract, the memorandum was signed by both parties. No payment had been made thereon until after the vendor had advised the vendee that "the

deal is therefore declared off." The holding that the writing was but an option rested on the language employed therein. It was but an offer to sell on certain terms and conditions and these had not been complied with at the time of the withdrawal of the offer by the vendor. As none of the above cases was in any way referred to, we apprehend that they were not considered applicable to the facts there presented.

The case of *Wilkinson* v. *Heavenrich,* 58 Mich. 574 (55 Am. Rep. 708), in my opinion, is in no way controlling. The action was for damages for breach of a contract of hiring. It was based on a memorandum signed by the defendants only, in which they agreed to pay plaintiff a stipulated wage for three years. As pointed out by Mr. Justice STONE in *Smith* v. *Mathis, supra:*

"The decision was based upon another section of the statute of frauds which requires the writing to be signed by the parties to be charged therewith. We have sought to show that, in the case of the sale of real estate, the statute only requires the contract or memorandum to be signed by the vendor."

*Hollingshead* v. *Morris,* 172 Mich. 126 (41 L. R. A. [N. S.] 310), also relied on, was decided on facts entirely different from those here presented. The action was brought for damages for breach due to the vendor's refusal to convey. In the opinion, written by Chief Justice MOORE, it is said:

"There are four important facts that stand out unquestioned in this case: *First,* that the defendant had sold the property to Mr. Shapiro before Mr. Doying ever received any communication from defendant; *second,* that no written acceptance was shown to the defendant before he notified both Mr. Keyes and Mr. Hollingshead that he had sold the property; *third,* that no written acceptance was delivered to him or tendered to him before he revoked his offer to sell: *fourth,* no money was tendered to him, to apply on the contract before he revoked his offer to sell."

In disposing of the case, it was said:

"In the absence of any payment by Mr. Doying or the delivery of any written acceptance signed by him, how can it be said Mr. Doying is bound to perform upon his part so as to make the contract mutual?"

The failure of the plaintiff to make the additional payment within the 30 days may well be said to have been due to the action of defendants' agent, Davidson, who, on being advised within such time that plaintiff was ready to close the deal, fixed Saturday, the day after such time had expired, to do so. He sent word to Mr. Sifford to come to his office at that time and, when he did not appear, telephoned to his house and otherwise tried to find him. Mr. Sifford was down town, knew of the arrangement as made by Davidson, but did not go to his office. While the writing provides for a forfeiture of the $25 if the balance be not paid within the 30 days, such a provision is usual in all land contracts but is rarely enforced unless the contract itself makes time the essence thereof. Performance within the time was waived by Davidson, defendants' agent, with Mr. Sifford's knowledge and apparent consent. The binding effect of such a waiver and the rule of law applying to such forfeitures are so fully considered by Mr. Justice STONE in the recent case of *Waller* v. *Lieberman*, 214 Mich. 428, that I do not further discuss them.

The conclusions reached by the trial court and the decree rendered granting specific performance were fully justified by the proofs. The decree will be modified by inserting the words "November 1, 1921," in the place of "10 days" in the provision for payment and delivery of deed and as thus modified affirmed, with costs to plaintiff.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, and CLARK, JJ., concurred with SHARPE, J.

BIRD, J. (*dissenting*).    This bill was filed by plaintiff to compel defendants to convey to him a lot in the city of Dowagiac.    The trial court made a decree enforcing the agreement of the parties and defendants have appealed.    Defendants listed their house and lot with Davidson & Van Antwerp, real estate brokers, with instructions to sell the same for $2,500. The offer coming to the attention of plaintiff, he looked the premises over and advised the brokers he would purchase it for that sum, and paid thereon $25.    Defendants gave him the following receipt:

> "Dowagiac, Michigan,
> February 18, 1920.
> "Received of J. C. Pangburn twenty-five ($25.00) dollars as part payment on the property located at 205 Oak street, Dowagiac, Michigan, which I have this day sold to said Pangburn, through Davidson & Van Antwerp, brokers, for the sum of twenty-five hundred ($2,500) dollars, we to furnish abstract of clear title and warranty deed within thirty (30) days; said Pangburn is hereby receipted to for the above twenty-five ($25.00) dollars as earnest money and to apply on the said twenty-five hundred ($2,500.00) dollars purchase, balance of twenty-four hundred and seventy-five ($2,475) dollars to be paid on or before thirty (30) days; or if not paid this twenty-five ($25.00) dollars, to be forfeited.    Possession to be given on or before March 20, 1920.
> "MARIE SIFFORD,
> "FLOYD SIFFORD."

Following this the abstract was re-certified and arrangements were made by plaintiff with a local building and loan association to secure a portion of the money.    Plaintiff announced to the brokers, before the expiration of the 30 days, that he was ready to close the deal.    The brokers fixed March 20th as the date for executing the conveyance and notified defendants.    Defendant Floyd Sifford went down street Saturday evening, March 20th, but did not

216—Mich.—11.

go to the brokers' office. On Monday, March 22d, plaintiff claims a tender of $2,475 was made by him, and a deed demanded. Defendant Floyd Sifford replied that he could do no business with him. This suit was then begun to enforce the agreement. The hearing resulted in a decree granting the prayer of plaintiff's bill.

The position of plaintiff is that the parties made an oral agreement for the sale of the premises and that the receipt subsequently made was written evidence of the agreement which satisfied the statute of frauds. That the deal was not closed within the 30 days, but plaintiff had announced his readiness to close it before the expiration of the 30 days. That Saturday evening was fixed by the brokers as a convenient time for defendant, as he was employed in the stove plant.

Defendants argue that the agreement was nothing more than an option given by defendants; that it was not accepted and paid for within the time specified in the agreement, and, therefore, no rights accrued to the plaintiff thereunder.

1. There is considerable discussion between counsel whether the agreement was a contract for the sale of the premises, or an option. It is true there is more or less language made use of in the receipt which is more suitable to a contract than to an option, but the real test by which it must be determined is whether both parties are bound by the agreement. Whether there is a mutuality of contract. If defendants were obliged to sell and plaintiff to buy, then it is a contract. The receipt was not signed by plaintiff. Therefore, we conclude that he could purchase the premises or not, as he saw fit. This makes the agreement a unilateral option contract. This is made plain by the recent case of *Tattan* v. *Bryant*, 198 Mich. 515.

2. The question then arises whether the unilateral contract ever became a bilateral contract. Plaintiff's testimony shows that he accepted the option orally, but is this enough to convert the option into a contract which would bind both parties? It appears to be settled in this State that to convert an option for the purchase of real estate into a bilateral contract, one of two things must be done, either the consideration must be paid, or a written acceptance must be made. This question is discussed at some length in 27 R. C. L. p. 327. It is there said in part:

"According to the view taken in some cases, where a general written offer to sell land is made, the acceptance of the offer, to render the contract binding on the vendor, must be either in writing so as to render the purchaser subject under the statute of frauds to an action for its enforcement or the acceptance must be accompanied with a tender of the purchase money, where the terms of the offer require cash payment, as a mere promise which cannot be enforced either at law or in equity is not a sufficient consideration for the promise of the vendor to convey. In other cases, however, it is held that unless the offer requires a written acceptance or the payment of the purchase money at the time of the acceptance, an oral acceptance is sufficient in so far as the liability of the vendor is concerned, especially if no objection to the form of the acceptance is made by the vendor."

This court has gone along with the first class mentioned in the foregoing, as will be seen by an examination of *Wilkinson* v. *Heavenrich*, 58 Mich. 574 (55 Am. Rep. 708). The variance on the question in the courts is mentioned by Mr. Justice CHAMPLIN, who wrote the opinion, and cases are cited by him supporting each rule. His conclusion is as follows:

"I shall not attempt a reconciliation where reconciliation is impossible; but as the question is new in this State, the court is left to adopt such view as appears to rest upon principle. It is a general principle

in the law of contracts, but not without exception, that an agreement entered into between parties competent to contract, in order to be binding, must be mutual; and this is especially so when the consideration consists of mutual promises.   In such cases, if it appears that the one party never was bound on his part to do the act which forms the consideration for the promise of the other, the agreement is void for want of mutuality.   *Hopkins* v. *Logan,* 5 M. & W. 241; *Dorsey* v. *Packwood,* 12 How. (U. S.) 126; *Ewins* v. *Gordon,* 49 N. H. 444; *Hoddesdon Gas Co.* v. *Haselwood,* 6 C. B. (N. S.) 239; *Souch* v. *Strawbridge,* 2 M. G. & S. 808; *Callis* v. *Bothamly,* 7 Wkly. R. 87; *Sykes* v. *Dixon,* 9 Ad. & El. 693; Addison on Contracts, § 18; Parsons on Contracts, p. 449; *Utica, etc., R. Co.* v. *Brickerhoff,* 21 Wend. (N. Y.) 138 (34 Am. Dec. 220); *Lester* v. *Jewett,* 12 Barb. (N. Y.) 502."

In *Hollingshead* v. *Morris,* 172 Mich. 126 (41 L. R. A. [N. S.] 310), a 30-day option was given in writing by defendant Morris on certain Toledo real estate.   The optionee, Doying, endorsed his acceptance in writing on the option, and the fact that he had done so was communicated to defendant Morris by telephone, but the written acceptance was never delivered to Morris and he never saw it until after suit was begun.   Morris replied to Doying that he had sold the property.   Suit for specific performance was begun and the question was raised whether the option had ever been legally accepted.   It was held that no legal acceptance of the option had been made because there was neither an acceptance in writing nor a payment of the consideration.   The case of *Wilkinson* v. *Heavenrich, supra,* was cited and quoted from.

James, in his work on Option Contracts, § 415, discusses the question and notes the division of the State courts on the question.   He places Michigan among those States that hold that it is necessary to pay the consideration or accept the option in writing,

and cites the cases of *Wilkinson* v. *Heavenrich, supra; Goodspeed* v. *Wiard Plow Co.,* 45 Mich. 322; *Mier* v. *Haddon,* 148 Mich. 488.

3. It is conceded in the instant case that no written acceptance of the option was made. It is claimed, however, that a tender was made of the consideration on March 22d. The circumstances of the tender were testified to by Mr. Davidson, as follows:

"*Q.* Up to that time you had never tendered any money?

"*A.* No, sir. Why, I told him there we were all ready, which we were all ready. We had the money up there in the office.

"*Q.* Did you ever tender any money at any time?

"*A.* Yes, sir.

"*Q.* Did you ever exhibit any money?

"*A.* I did not lay it out and count it out to him.

"*Q.* Did you hold it up?

"*A.* I had a roll in my hands like that and says 'we are ready to settle with you.'

"*Q.* You had then the $2,475, did you?

"*A.* I had $800 in money and the Loan Company's check for the balance of $1,700.

"*Q.* From whom did you get the check?

"*A.* Mr. Bilderback.

"*Q.* It was not cashed?

"*A.* No, sir.

"*Q.* This was about Wednesday?

"*A.* I should think so.

"*Q.* When you came up there to make that tender, it was for the purpose of compelling Sifford to go through with the deal, wasn't it?

"*A.* Why, give him the opportunity, anyway."

This testimony falls short of showing a legal tender. It shows that Davidson had only $800 in currency and had a check for the balance, and does not even show that the check was indorsed to the defendant. If plaintiff desired to make an effective tender he should have tendered money, as that is the sole medium of payment. 26 R. C. L. p. 636. The general rule

being that where a sum of money is to be paid, a tender by check, either simple or certified, is not a sufficient legal tender; the reason assigned therefor being that a check is not lawful money. *Hall* v. *Appel,* 67 Conn. 585 (35 Atl. 524) ; *Neal* v. *Finley,* 136 Ky. 346 (124 S. W. 348) ; *Collier* v. *White,* 67 Miss. 133 (6 South. 618) ; *Sharp* v. *Todd,* 38 N. J. Eq., 324.

We think the testimony as a whole fails to show that there was any consideration paid, or that the option was accepted in writing.    Under these circumstances, we must hold that there was no act upon the part of the plaintiff which converted the unilateral contract into a bilateral contract, and, therefore, under the rule established in this State the contract was not enforceable because not mutually binding.

There is still the further question as to whether what was done was done within the life of the option but in view of our conclusion on the main question this becomes immaterial and will not be discussed.

The decree should be reversed and the bill dismissed, with costs to the defendants.