WALLACE PIERCE ET AL. v. JONAS J. PIERCE.

| 89 | 233 |
| 124 | 591 |

[See 55 Mich. 629.]

*Partnership—Accounting—Tenancy in common—Rental value of property—Compensation for services.*

1. Where one tenant in common enters into possession of the joint property for all of the owners under an express agreement that it is to be used for the benefit of all, and in violation of such agreement converts such possession and use to his sole benefit, he will be held liable to account to his co-tenants for the value of such possession and use.

2. In the absence of an agreement, a partner is not entitled to compensation for his services; citing *Major v. Todd*, 84 Mich. 85, and cases cited.

Appeal from Marquette. (Stone, J.) Argued November 19, 1891. Decided December 21, 1891.

Bill for an accounting. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*W. P. Healy (A. B. Eldredge* and *E. E. Osborn,* of counsel), for complainants.

*Ball & Hanscom,* for defendant, contended:

1. The allowance of rent in favor of tenants in common against their co-tenants is neither supported by reason nor authority; citing *Everts v. Beach,* 31 Mich. 136; *Wilmarth v. Palmer,* 34 Id. 347; *Davis v. Filer,* 40 Id. 316; *McMahon v. Burchell,* 2 Phill. Ch. 127, 134; *Henderson v. Eason,* 17 Q. B. 701.

2. Tenants in common have been held liable for use and occupation where they have occupied the whole property and excluded their co-tenants therefrom; citing *Carver v. Fennimore,* 116 Ind. 236; *Wickoff v. Wickoff* (N. J.), 18 Atl. Rep. 74; *Almy v. Daniels,* 15 R. I. 312.

McGrath, J. Defendant appeals from the decree of the court below upon an accounting ordered by this Court in *Pierce v. Pierce,* 55 Mich. 629.

Complainants and defendant were joint owners of the property known as the "Cheshire Mine." Defendant went into possession of the Cheshire mine, and the property connected therewith, under an agreement with complainants that the property should be operated in their joint behalf. The ore deposit upon the property became exhausted in 1881. Prior to this time defendant had obtained a lease of adjoining property, known as the "Swanzey Mine," and was operating the same from the Cheshire mine plant. The Cheshire property consisted of 703 acres of land, 28 houses, a store, blacksmith shop,

barn, a saw-mill, carpenter shop, mining tools, imple-
ments, machinery, etc.   After the Cheshire mine ceased
to produce, defendant continued to use the Cheshire
plant in the operation of the Swanzey mine, until the
fall of 1887.   This use included the use of officers'
quarters, dwelling-houses, saw-mill, carpenter shop, etc.,
as well as the use of about 80 acres of cultivated land
for farming purposes.   No other or different arrangement
was made with complainants.

In 1882 complainants filed their bill, claiming that the
lease of the Swanzey property was for the joint benefit
of complainants and defendant, and praying that it be
so decreed; that a receiver be appointed; that an account-
ing be had; and that the Cheshire property be parti-
tioned or sold.   On appeal, this Court, in January, 1885,
decreed that the Swanzey lease was the sole property of
defendant, and ordered defendant—

" As manager and general agent of said Cheshire Iron
Company, to file, within 60 days, a sworn statement of
the business of the Cheshire Iron Company, including
receipts and disbursements, the quantity of personal prop-
erty and amount of money in his hands belonging to
said Cheshire Iron Company, with a full report of his
doings as such manager."

The Court further ordered that the Cheshire property
be sold for the purpose of partition, and refused to
appoint a receiver.   Defendant having failed to file the
account as aforesaid, the complainants moved the court
in February, 1888, for an order permitting them to take
testimony, etc.   The defendant in December, 1888, filed
the account ordered.   In the mean time he had continued
to occupy and use the Cheshire plant in the operation of
the Swanzey mine.

The commissioner to whom the matter of the account-
ing was referred charged the defendant with rent for the
use of the Cheshire mining plant for upwards of five

years, and the first objection is made to this allowance. The defendant insists that the allowance of rent in favor of tenants in common against their co-tenant is not warranted; citing *Everts v. Beach,* 31 Mich. 136. The rule of that case has no application to the facts of the present case. There is no such individual possession here as will bring this case within the principle there laid down. The defendant went into possession of the Cheshire property for all the parties under an express agreement that the property was to be operated for the joint benefit of all. No other or different arrangement has since been made. This possession had not been surrendered. The other joint owners, respecting that agreement, would not assert any right to individual possession. Defendant is called upon here, not as co-tenant to pay rent, but as managing partner to account with respect to the use of property intrusted to him as such. He cannot be allowed to convert to his own use a possession which he held for the benefit of all, and avoid an account. Whatever of value he received from the property, he must account for to those jointly interested with himself. If he has appropriated the possession intrusted to him, he must account as well for its value as though he had appropriated the rents after their collection.

Again, it was urged by complainants on the hearing of the principal case, as a reason why the Swanzey mine should be decreed to be joint property, that it had been operated by and through the use of the Cheshire plant, and the defendant claimed that this use was to be made good by rent, and defendant cannot now be allowed to escape such payment; indeed, in view of that claim, the accounting ordered must be regarded as embracing the rents.

The second objection made is to the disallowance of

defendant's claim for services. There is no evidence of any agreement to pay a salary to the defendant, and, in the absence of an agreement, a partner is not entitled to compensation for his services. *Major v. Todd,* 84 Mich. 85, and cases cited.

The third objection is to the reduction of the amount alleged to have been paid to four laborers. Defendant claimed to have paid these laborers $660, and that one-half that sum, or $330, was properly chargeable to the Cheshire. The commissioner found that not to exceed one-third of the time of these men was properly chargeable to the Cheshire, and reduced the amount to $220. From an examination of the testimony, I find no reason to disturb this finding.

The last objection relates to the saw-mill account. The Cheshire mine ceased operations in the latter part of 1881. The saw-mill account shows expenditures until the close of 1885, and the account is closed in July, 1886, showing a loss of $2,078.08. Defendant claimed that the saw-mill account was a part of the Cheshire plant; that a large number of logs were bought in 1881 and 1882, and that the saw-mill was operated to cut them into lumber; that some lumber was used in 1881 at the Cheshire mine, and afterwards in repairing the buildings on the Cheshire property; that the lumber used on the Cheshire property was not charged up to expense or credited to the saw-mill account, with the exception of 23,729 feet, which appears in the account; that the lumber used by the Swanzey was charged to it; that lumber was sold to other parties, and credited to the account. The total expenditure on mill account for 1881 was $1,531.18, while the expenditures from January 1, 1882, up to January, 1886, aggregated $4,690.70. During this time from $600 fo $1,000 was expended in repairing the mill. Defendant insists that the entire loss should be

charged up to the Cheshire Company. The commissioner agreed with defendant's contention, but the court cut the amount in two, charging $1,000 of the loss to defendant.

The saw-mill was operated as an adjunct to mining operations. It was in no sense a custom-mill, and during its operations the sale of lumber to outside parties was a mere incident. The primary purpose of the purchase of the logs in 1881 and 1882 was their use in the operation of the Cheshire and Swanzey mines. The logs were to be sawed as needed. When the Cheshire mine gave out, so far as the Cheshire Company was concerned, it was simply a matter of sawing up what logs remained, and disposing of the lumber, retaining what was thought to be necessary for the use in repairs upon the Cheshire. The holding of the logs and the subsequent occasional operation of the mill to suit the convenience of the owners of the Swanzey was in the interest of the Swanzey. The mill was at no time expected to be an independent profit-earning venture. Its advantage and value were as a part of mining operations. When the Cheshire mine ceased operations, instead of charging up the subsequent cost of raw material and the expense of running the mill to the Cheshire, failing to credit the mill with the small proportion of lumber used in the Cheshire property, and charging the Swanzey with a price fixed by defendant for the lumber used by it, the logs on hand should have been charged to the Swanzey, the Swanzey should have been charged with the expense of operating the mill, and the value of the use, and, perhaps, with the repairs, and the Cheshire Company should have been charged with what lumber it used. There is no sufficient ·data from which this can now be done, and it was evidently in view of this difficulty that the court below divided the loss. The defendant is not in a situation to com-

plain. In any event, the loss, if any occurred, during the time that both mines were operated, should have been divided between the Cheshire and the Swanzey, and the loss after that time should have been borne by the Swanzey alone, and the value of the use should have been allowed to the Cheshire. The saw-mill should have been treated just as the carpenter shop or the machine shop or blacksmith shop was treated.

The decree of the court below is affirmed, with costs to complainants.

The other Justices concurred.