JENSEN *v.* SHEVITZ.

1. REFORMATION OF INSTRUMENTS — LAND CONTRACTS — POWER OF CHANCERY COURT—FRAUD—MUTUAL MISTAKE.
   A chancery court has the power to grant relief of reformation of a contract on the ground of fraud or mutual mistake, but this cannot be done in a court of law.[1]

2. SAME—EVIDENCE—SUFFICIENCY.
   In a suit to reform a land contract on the ground of mutual mistake in stating the total amount of the pur-

[1] Reformation of Instruments, 34 Cyc. pp. 917, 920, 962, 963.

chase price, which was less than the sum of the various items enumerated therein, the decree of the court below granting the relief prayed, *held,* justified by the record.[2]

Appeal from Wayne; Houghton (Samuel G.), J., presiding. Submitted January 26, 1926. (Docket No. 162.) Decided March 20, 1926.

Bill by Guy W. Jensen and another against Jacob Shevitz, David Sloan, and others to reform a land contract. From a decree for plaintiffs, defendants Shevitz and Sloan appeal. Affirmed.

*Miller, Baldwin & Boos,* for plaintiffs.

*Friedman, Meyers & Keys,* for appellants.

WIEST, J. This case is instituted by plaintiffs to reform a contract as to the purchase price therein named in regard to the sale and exchange of apartment house properties between the parties. Defendants other than the Shevitzes and Sloans are not interested in the result. Prior to April 8, 1920, plaintiffs were the owners of the equitable title to valuable real estate in the city of Detroit, known as the Palmer apartments, containing 22 apartments and 3 stores. They had purchased this property on a land contract from one Albert E. and Fannye Bernstein. On the above date plaintiffs entered into a contract with the defendants Jacob Shevitz and Anna Shevitz, his wife, and David Sloan and Rose Sloan, his wife, in regard to said property. That portion of the contract which is material for the consideration of this case is as follows:

"Parties of the first part agree to sell, and parties of the second part agree to buy all of that certain piece or parcel of property known as the Palmer apartments, located * * * , for a price of one hundred twenty-six thousand and ten ($126,010) dollars, payable as

[2] Reformation of Instruments, 34 Cyc. p. 984.

follows: One thousand ($1,000) dollars upon execution of this agreement as consideration herefor and as earnest money, receipt whereof is hereby confessed and acknowledged by the first parties; fourteen thousand ($14,000) dollars in cash as the closing of this transaction; thirty-one thousand two hundred forty ($31,240) dollars by the second parties assigning or turning over to the first parties all of their right, title and interest in and to a certain other land contract; * * * and the balance of said purchase price of one hundred twenty-six thousand and ten ($126,010) dollars, amounting to eighty-one thousand three hundred ($81,300) to be paid by the second parties accepting an assignment of and assuming and agreeing to pay such an amount upon that certain land contract covering the premises first above described, known as the Palmer apartments to be purchased by the second parties hereto as evidenced by that certain land contract under date of the first day of August, A. D. 1918, between Albert E. Bernstein and Fannye Bernstein * * * and assigned so far as vendees are concerned to Guy W. Jensen, one of the first parties hereto."

It will be noted that the consideration named in the first instance in the contract, viz., $126,010, does not tally with the itemized statement in the contract which follows, viz., $1,000 down as earnest money, $14,000 in cash at the time of closing the transaction, $31,240 by the assigning to plaintiffs of the land contract owned by defendants, and $81,300 balance due on the Palmer apartment contract to the Bernsteins or their assigns, which defendants assumed and agreed to pay, which makes a total of $127,540.

Plaintiffs claim that the four specified items correctly state the purchase price, and that the insertion in the contract of $126,010 as the purchase price was clearly an error, and that the transaction was a trade rather than a purchase and sale agreement, which they claim is indicated by the various manners in which the total sum was arrived at.

Defendants, on the contrary, contend that they were to purchase the property for $126,000; that they were to assume the indebtedness of $81,300, turn over to plaintiffs their equity in the land contract referred to, amounting to $31,240, pay $1,000 earnest money, and the balance, $12,470, in cash.   This issue of fact was heard by the chancellor, who, after listening to a considerable amount of testimony, filed his opinion in which he held that the true purchase price was $127,540, and that the price mentioned in the contract of $126,010 was clearly a mistake, a mutual error of the parties, which ought to be corrected by the decree of the court.   Such a decree was duly entered and the defendants Jacob Shevitz, Anna Shevitz, David Sloan, and Rose Sloan, appealed therefrom.

There can be no question of the right of a chancery court to grant relief of reformation of a contract on the ground of fraud or mutual mistake.   This cannot be done in a court of law.   *Skiba* v. *Gustin,* 161 Mich. 358; *Bush* v. *Merriman,* 87 Mich. 260; *Kenyon* v. *Cunningham,* 146 Mich. 430; *Schlossman* v. *Rouse,* 197 Mich. 399; 23 R. C. L. p. 331; *Labranche* v. *Perron,* 209 Mich. 239; *Kutsche* v. *Ford,* 222 Mich. 442, and many others.

Was the chancellor then correct in his conclusion of fact?   It would be unprofitable to quote the record exhaustively to show how he arrived at the conclusion as to $127,540 being the correct amount defendants were to pay the plaintiffs in this transaction.   The following will suffice: The contract itself provides for a number of items which total the sum named, and the sum of $126,010 mentioned in the contract may well have been inserted by reason of a mistake in adding those items.   No one attempts to account for the odd $10 in the latter figure, and the defendants themselves claim they were to pay only $126,000, and that

they do not know how the extra $10 came to be added.

During the progress of negotiations between the parties two extensions of time were given the defendants, who on each occasion paid plaintiffs $1,000 therefor. This left a balance of cash to be paid of $12,000, provided the purchase price was $127,540, as contended by the plaintiffs, while if the price was $126,010, as defendants claim, the balance of cash to be paid would have been only $10,470. Still, when the deal was finally consummated defendants took to plaintiffs' office a check for exactly $12,000, tending to show most clearly that they then expected such an amount due, and intended to pay it to plaintiffs.

Further, the record discloses that the defendants borrowed from one Kosofsky and Bergman $15,000 to be applied on the contract in question. That their dealing with these men was in writing, in which it was recited that the cost of acquiring plaintiffs' land contract on the Palmer apartments was $46,240, which, added to the balance due thereon from plaintiffs, to wit, $81,300, made the exact total of $127,540 as claimed by the plaintiffs.

We agree with the chancellor in his conclusion of fact which he states as follows:

"Considering the fact that the several specified items of payment aggregated $127,540, coupled with the testimony of the plaintiffs that those items constitute the purchase price of the property, and considering in addition to that the representations made by the defendants in their agreement with Kosofsky and Bergman, that it cost him $46,240 to obtain plaintiffs' equity therein, which is the difference between the indebtedness assumed by the defendants and the $127,540; considering the further fact that the defendants had paid $3,000 of the $15,000, and when the deal was closed came to plaintiffs' office with a check for the exact difference between what had been paid and the $15,000, the only logical, reason-

able conclusion that can be reached from such a state of facts is that when these transactions were finally consummated and the money borrowed by the defendants from Kosofsky and Bergman, they then understood, as stated, that they were to pay $46,240 for plaintiffs' equity, which made the actual purchase price of the property, as they then understood it, $127,540, and that the purchase price entered in the contract of $126,010 was clearly an error, which ought and may be corrected by a decree of this court to correspond with the facts."

In arriving at the same conclusion as the chancellor, we have not overlooked the evidence of the defendants which makes a question of fact. We are, however, convinced, after a careful consideration of the entire record, that the decree of the trial court should be sustained.

Affirmed, with costs to plaintiffs.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, CLARK, and McDONALD, JJ., concurred. SNOW, J., did not sit.