WHITE v. EVANGELICAL LUTHERAN SALEM CHURCH.

1. APPEAL AND ERROR—RIGHTS OF ONE NOT APPEALING FROM ORDER
DENYING PETITION TO INTERVENE NOT INVOLVED.
  In a suit by property owners to enjoin the erection of a
  church and parochial school as in violation of building
  restrictions, one whose petition to intervene was denied,
  and who did not appeal therefrom, is not before the court,
  his rights are not involved, and they do not inure to the
  appealing plaintiffs.

2. COVENANTS—BUILDING RESTRICTIONS — PLAN OF DEVELOPER OF
SUBDIVISION INCLUDED CHURCHES, ETC.
  In a suit by property owners to enjoin the erection of
  a church and parochial school as in violation of building
  restrictions, record held, to show that, while the com-
  pany developing the subdivision in question had in mind
  the making of a high class residential district, it also had
  in view that necessary adjuncts to such a district, such
  as churches and schools, should also be provided for.

3. SAME—PLEADING—PLAINTIFFS CLAIMING RESTRICTIONS IN CER-
TAIN BLOCK BOUND THEREBY.
  Where the subdivision was not developed all at once, but
  blocks were opened up at different times with varying
  restrictions, and plaintiffs in their bill claimed restrictions
  in a certain block, they are bound by their bill.

4. SAME—RIGHT TO USE LAND FOR CHURCH PURPOSES COULD NOT
BE TAKEN AWAY BY SUBSEQUENT RESTRICTIONS.
  If a church society acquired land with the right to use it
  for church and school purposes, such right could not be
  taken from it by restrictions imposed on land in the same
  block in subsequent contracts.

5. SAME—EVIDENCE HELD TO SHOW THAT DEFENDANT FIRST PUR-
CHASED WITHOUT RESTRICTIONS.
  The finding of the court below that the developer of the
  subdivision, in carrying out its plan of development, first

---

¹Appeal and Error, 4 C. J. §§ 2594, 2604; ²Injunctions, 32 C. J.
§ 581; ³Equity, 21 C. J. § 425; ⁴Deeds, 18 C. J. § 458 (Anno);
⁵Injunctions, 32 C. J. § 581.

sold the land in the block in question for church and school purposes, and thereafter sold the balance of the block for residential purposes, with appropriate restrictions, *held*, justified by the record.

6. FRAUDS, STATUTE OF—CONTRACT MUST BE SIGNED BY VENDOR— ACCEPTANCE BY VENDEE NEED NOT BE IN WRITING.

A contract to convey land must be signed by the vendor to satisfy the statute of frauds (3 Comp. Laws 1915, §§ 11970-11979), but if the only obligation of the vendee is the payment of the purchase price, his acceptance need not be in writing.

7. VENDOR AND PURCHASER—CONTRACT EXECUTED BY VENDOR AND ACCEPTED BY VENDEES BECAME BINDING.

Where the vendor executed a valid contract for the sale of land for church and school purposes on a certain date, and it was accepted by the trustees of the church, it became a binding contract, and the precise date the trustees actually signed it is not controlling.

8. COVENANTS—BUILDING RESTRICTIONS—CONSTRUCTIVE NOTICE.

Where, in a subdivision, there were churches, schools, and business places, church trustees purchasing land in a vacant block for church and school purposes may not be said to have constructive notice of the adoption and execution of a uniform plan limiting the use of said land to residential purposes, and the fact that a typewritten portion of the contract was pasted over printed portions of the contract did not give them constructive notice of the portions thus obliterated.

Appeal from Wayne; Murphy (Alfred J.), J.   Submitted April 12, 1927.   (Docket No. 79.)   Decided June 6, 1927.

Bill by Eugene C. White and others against the Evangelical Lutheran Salem Church, the Cook Farm Company, and others to restrain the violation of building restrictions.   From a decree dismissing the bill, plaintiffs appeal.   Affirmed.

⁶Frauds, Statute of, 27 C. J. § 361; ⁷Vendor and Purchaser, 39 Cyc. p. 1228; ⁸Deeds, 18 C. J. § 462 (Anno).

*Lynch & Lovett,* for plaintiffs.

*Groesbeck, Sempliner, Kelly & Baillie,* for defendant church.

*Trowbridge, Lewis & Watkins,* for defendant Cook Farm Co.

FELLOWS, J.    While in plaintiffs' bill there was prayer for other relief the case was tried in the court below and disposed of upon the sole question of whether plaintiffs were entitled to restrain defendant Evangelical Lutheran Salem Church from erecting a church and a parochial school building on the premises purchased by it from defendant Cook Farm Company. It was submitted to this court solely on that question and will be so disposed of here.    The defendant company has been largely instrumental in developing that part of Detroit known as the Indian Village.    The property here involved is in that development.    The property owned by plaintiffs and defendant church either under land contracts or deeds is all in the east half of block 17 of the subdivision of that part of the Cook farm private claims 153, 155, and 180 between Forest and Gratiot avenues according to the recorded plat thereof.    Block 17 is between Forest and Warren avenues and fronts on Iroquois with a depth of 110 feet.    Plaintiffs White's land has a frontage of 40 feet on Iroquois, plaintiff Harrison's a frontage of 50 feet, and plaintiffs Engelhard's a frontage of 47 feet. Defendant church has the south 400 feet frontage. The land in this half block was not divided into lots but was described in the contracts and deeds by metes and bounds.    In the contracts under which plaintiffs purchased from the company the use of the property was restricted to "the ordinary and usual purpose of a residence or homestead and not otherwise."    A minimum valuation for such residence was fixed and there were restrictions as to the distance it should be

back from the street and lot lines and restrictions as to the garage, fences, and other matters not necessary to detail.   The contracts also contained this provision:

"Said first party agrees on its part it will not lease nor contract for the sale of, nor sell the premises or any part thereof now owned by it, included in said plat, without inserting in said leases, contracts, or deeds, conditions imposing upon the lessees, purchasers, their heirs or assigns, the same restrictions as are contained in paragraph II."   *   *   *

In the contract with defendant church it was permitted to erect a church and school on the south 280 feet and the balance was restricted to residential purposes substantially as above outlined.

We should dispose of a preliminary question before taking up the main questions in the case.   After the hearing had progressed two or three days one Weyhing, who owned property on Burns, some distance from the *locus in quo*, filed a petition to intervene.   The prayer of his petition was denied on the ground of laches which had not been excused.   He did not appeal from the order denying the prayer of the petition nor from the decree.   Under these circumstances he is not before the court, his rights are not here involved, nor do they inure to the appealing plaintiffs.

The record is satisfying that in the development of the Indian Village the company not only had in mind the view of making a high class residential district, but it also had in view the fact that the necessary adjuncts to such a district should also be provided for. Seven churches have been erected within its limits, and at least three and possibly five schools have been established; one directly opposite the land purchased by defendant accommodates 500 pupils and none of the plaintiffs or their witnesses object to it.   At least one block is given over to a public park.   In certain

blocks duplexes are permitted, and business places and oil stations are operating within its borders. The entire project was not put on the market at once, but as the development progressed the different blocks have been opened up. Plaintiffs and their counsel evidently had this fact in mind when the bill was drafted, as they claimed rights by reason of restrictions on this block. By their bill they were bound. The trial judge was satisfied that in carrying out the plan of development of the company it first sold out of this block to the defendant church for church purposes its strip of land. This land was opposite the school, was on the car line and at a noisy corner, and was more available for the needs of the defendant church than it was for residential purposes. The court found that thereafter the company sold the balance of the land in this half block for residential purposes with appropriate restrictions for such purpose.

While there are incidental questions in the case the overweening question is the date defendant acquired its rights. Manifestly, if defendant church acquired its right to use the premises for church and school purposes without restriction, such right could not be taken from it by subsequent restrictions imposed on land in the same block in subsequent contracts. The contract with the church bears date April 21, 1921; the contract with the plaintiffs White, which is earlier in point of time than that of any of the other plaintiffs, bears date the 3d of May, 1921. On the books of the defendant company the sale to the church was entered under date of April 21st and the sale to White under date of April 28th. We are satisfied that on the 21st the defendant company executed the contract to the church, and a down payment was made, and that on the 28th White made a down payment of $100 and paid the balance of $4,900 on

May 3d.   The transactions took place over five years before the hearing and the witnesses were unable to fix by memory alone the exact day of the month each particular transaction occurred.   The trustees of the church signed the contract with the company but they are unable to definitely fix the date of such signing from memory.   Within a few days after they made the down payment they made a sufficient payment to make the total up to $22,000, which was half the purchase price.   Plaintiffs' counsel urge that the circumstances and some of the testimony indicates that the trustees did not sign the contract until the full sum of $22,000 had been paid, and that inasmuch as the bank books of the company do not show a deposit of such a substantial amount until May 5th, it is to be inferred that such sum was not paid nor the contract signed until that date.   Such an inference is permissible, but the record also discloses that about $10,000 of the money used to make the payment was borrowed of one Toll and a note given, which had been recently paid.   After a search it was produced in court; it bore date May 2, 1921, and one of the trustees, while not able to fix the exact date of signing the contract, testified that the note was signed after the contract was.

That the company executed the contract and the trustees accepted it and made a down payment on April 21st is, we think, established, and the precise date the trustees actually signed it is, under our view, not controlling.   A contract to convey land must be signed by the vendor to satisfy the statute of frauds. But if the only obligation of the vendee is the payment of the purchase price his acceptance need not be in writing.   *Pangburn* v. *Sifford,* 216 Mich. 153, where numerous earlier cases are cited and considered. Counsel invoke the doctrine of *Wardell* v. *Williams,* 62 Mich. 50 (4 Am. St. Rep. 814), recently reaffirmed

in *Tromley* v. *Lange*, 236 Mich. 240. In these cases the vendees by the terms of the contract agreed to give back mortgages. These were agreements within the statute of frauds, and, to bind the vendees, required their signatures to the agreements. But the vendee in the instant case did not agree to execute a mortgage or to do anything other than the payment of the purchase price. Its parol acceptance of the agreement signed by the vendor made a binding contract between the parties. The parties having made a valid contract, binding on both parties, and so regarded by them, it is unimportant if true that it remained in the custody of one of them. *Detroit Land Contract Co.* v. *Green*, 202 Mich. 464.

Nor do we think there was any constructive notice to defendant church. The fact that a typewritten portion of the contract was pasted over printed portions of the contract did not give them constructive notice of the portions thus obliterated from the form. Nor is there any ground for holding that there was constructive notice by reason of the adoption and execution of a uniform plan. When the parties bought the block was vacant property. In other sections of Indian Village there were duplexes, churches, schools, and business places.

This court has gone far to protect parties in their rights under restrictive covenants. But we cannot go as far as plaintiffs would have us go in the instant case. The rights of defendant church antedate those of all the plaintiffs, and must be respected and upheld by this court.

The decree will be affirmed, with single costs of this court.

SHARPE, C. J., and BIRD, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.