ALFORD *v.* LEHMAN.

1. Partnership — Dissolution — Patent Rights — Ambiguity in Agreement.

Provision of equal partnership agreement whereby defendant, the managing partner represented that he was "the owner of certain patent rights upon precision built machines and parts, or will be * * * as soon as the patent for the same is perfected," *held,* on petitions for dissolution, too ambiguous to charge such defendant with failure of contribution in the amount of $20,000, the amount which plaintiff had agreed to contribute in cash.

2. Same — Dissolution — Capital Assets — Findings of Fact — Evidence.

Finding of circuit court commissioner and circuit judge on petition for dissolution of partnership that defendant managing

---

References for Points in Headnotes

[1, 3] 40 Am Jur, Partnership § 25.
[4] 40 Am Jur, Partnership § 323 *et seq.*
[5] 3 Am Jur, Appeal and Error § 912.
[7] 40 Am Jur, Partnership § 124.
[8] 3 Am Jur, Appeal and Error § 859.
[9] 14 Am Jur, Costs §§ 10, 11.

partner's patent rights were not shown to have had value as claimed is not disturbed on appeal in view of testimony that such defendant's contribution to the enterprise lay in the use of his building, the land it was on and the tools and materials of the going business he was operating at the time the partnership was formed and to which plaintiff was to contribute cash.

**3.** SAME—DISSOLUTION—REFORMATION OF AGREEMENT—MISTAKE.

Provision of partnership agreement that defendant managing partner was to contribute present and future patent rights upon precision built machines, an ambiguous provision that was the result of a mutual mistake, since the parties both intended that such defendant's contribution was to be the use of his building and the land it was on and tools and materials and the going business he had at that time, *held*, to have afforded a proper basis for reformation of the agreement as actually effected by the decree for dissolution.

**4.** ACCOUNTING—AMOUNT—PURPOSE OF PAYMENT.

Accounting requires information not only as to the amount involved but also for what the money was paid.

**5.** PARTNERSHIP—CONTRIBUTIONS—BURDEN OF PROOF.

Defendant managing partner who claimed various items as contributions during period of existence of the firm had the burden of proof as to such items and the findings of the circuit court commissioner and circuit judge that, in effect, defendant had not sustained such burden were justified under record presented on appeal, great weight being given to the view of the facts taken by the court below even though chancery matters are heard *de novo* on appeal.

**6.** SAME—SALARY OF MANAGING PARTNER—DISALLOWANCE ON DISSOLUTION.

Disallowance of defendant managing partner's claim for salary for services rendered partnership for upwards of 4 years of its existence is not disturbed on cross appeal from decree of dissolution, where partnership agreement provision was that he was to be allowed a salary "in an amount to be agreed upon by the parties," the subject was never discussed, plaintiff claimed the salary question was to be deferred until there was a profit and there was no profit, and it further appears that defendant did not devote his entire time to the business as it was agreed he should do.

7. SAME—SALARY.

A partner's claim for salary must be founded upon the express terms of the partnership agreement, since partners are not generally entitled to compensation for services.

8. SAME—QUESTIONS REVIEWABLE—ACCOUNTING—PROFITS IN BUSINESS CONDUCTED IN VIOLATION OF AGREEMENT.

Plaintiff partner in manufacturing business who never sought an accounting for the profits, if any, made by the defendant managing partner in the conduct of his personal business with another firm in violation of the express terms of the partnership agreement, is not considered on appeal from decree of dissolution, where not raised or tried by the circuit court, even though the appeal is heard *de novo*.

9. COSTS—APPEAL—CROSS APPEAL—AFFIRMANCE.

No costs are allowed on appeal and cross appeal in suit for dissolution of partnership, where the decree is affirmed and neither party has prevailed entirely.

Appeal from Wayne; Webster (Arthur), J. Submitted October 8, 1957. (Docket No. 10, Calendar No. 47,157.) Decided November 26, 1957.

Bill by Dr. E. S. Alford against Albert Lehman for dissolution of partnership and for accounting. Cross bill asking similar relief. Decree granting dissolution on prayer of cross defendant and granting partial relief relative to sums claimed due. Defendant appeals. Plaintiff cross-appeals. Affirmed.

*Riggs & Shirley* (*Alton P. Shirley,* of counsel), for plaintiff.

*Dyer, Meek, Ruegsegger & Bullard* (*Willis C. Bullard* and *Robert P. Duff,* of counsel), for defendant.

EDWARDS, J. Immediately after World War II plaintiff and defendant in this cause formed a partnership in a small manufacturing enterprise. The articles of agreement were dated November 15, 1945. The enterprise lasted less than 5 years for plaintiff

Alford filed his bill of complaint for dissolution of the partnership February 24, 1950. It appears that plaintiff Alford was and is a practicing physician in the town of Belleville, and that defendant Lehman was and is engaged in a small manufacturing operation in that vicinity.

The parties are in substantial agreement as to the following: Defendant Lehman was to be the working partner devoting full time to this business enterprise and making use of the plant and equipment which he previously operated and owned. Plaintiff Alford was to be a nonworking partner whose contribution to the business was to be $20,000 cash. They were to divide all profits equally. The parties also agree that the ultimate result of the partnership enterprise was financial disaster, and that the bill of complaint for dissolution and accounting, and the cross bill of complaint for dissolution and accounting, really represent an attempt to accomplish equitable division of what Dr. Alford termed a "dead horse."

Testimony pertaining to this cause was taken before a circuit court commissioner on reference for an accounting. Exceptions were filed as to a portion of the findings of fact and recommendations of the circuit court commissioner, and a hearing was held thereon resulting in additional recommendations from the circuit court commissioner. Subsequently the cause came on for hearing before Circuit Judge Arthur Webster who entered an order confirming the report of the circuit court commissioner in part, and then set those issues to which exception had been taken down for hearing. After the hearing the court entered an opinion and decree which will be described in more detail hereafter. Both parties have appealed from said decree.

The partnership agreement was a lengthy and somewhat detailed legal document drawn up by

counsel for the plaintiff. Under it an equal partnership was created in a manufacturing enterprise to be known as the Huron Engineering Company. Plaintiff Alford was to supply $20,000 in cash, to be paid "to the party of the first part for his own use and benefit to perfect and improve and prepare for manufacturing the precision built machines and parts heretofore referred to, * * * being 1/2 of the estimated and agreed value of the patent rights owned by the said party of the first part."

The agreement provided for an equal partnership, with equal participation in profits. It also provided for monthly reports and financial statements. In addition, it provided for defendant Lehman to have "the sole and exclusive management of the partnership business," and for defendant Lehman to "devote his whole time and attention thereto, and carry on and manage the same for the common benefit of the partners to the utmost of his skill and ability." And it further provided that defendant Lehman should not "during the continuance of the partnership be concerned or engage directly or indirectly in any manufacture, trade, or business other than the business of the partnership." The agreement further provided that "in consideration of such services, the party of the first part [Lehman] shall be allowed an annual salary in an amount or amounts to be agreed upon by the parties hereto."

It appears that prior to the signing of the partnership agreement defendant Lehman had been engaged in machine-shop work for Great Lakes Steel Corporation, and that to a disputed extent he continued this work for some period after the signing of the partnership agreement. It also appears that in 1949 he resumed this work on his own account and without accounting therefor under the partnership.

It apparently was the intention of the parties to go into the manufacture and assembly of small

tractors, and it appears that, at least in part, because of lack of capital and large-scale purchasing power in relation to steel, the enterprise was a complete economic failure. Following losses in this operation, defendant Lehman developed and sought to manufacture a mower, with no better success.

It does appear that at least during 1947 and 1948 defendant Lehman devoted his efforts exclusively to the partnership business.

Plaintiff Alford, subsequent to the signing of the partnership agreement, paid into the partnership a total of $15,500 in cash. As to the balance of the capital he had undertaken to supply, he sought to accomplish this by becoming cosigner on a note with the Peoples State Bank for $4,500. It is agreed that this note was ultimately paid off out of partnership funds. Plaintiff Alford testified that during the entire period of the partnership he was discouraged by defendant Lehman from direct contact with the business, and that he actually was in the plant on only 3 different occasions. He also testified that the monthly reports and financial statements promised by defendant under the agreement were never forthcoming, and that during the years 1946 and 1947 defendant Lehman continued to talk of a rosy future for the partnership.

The circuit court commissioner found that the indorsement of the promissory note for $4,500 did not constitute payment by plaintiff Alford of the balance owed by him on the partnership capital account. Further, he found that defendant Lehman had paid a total of $1,454.18 on behalf of the partnership and was entitled to credit therefor in the ultimate accounting. He also found that defendant Lehman's claim for salary in the sum of $17,500 should be disallowed because defendant had at no time during the conduct of the partnership approached plaintiff in relation to salary, and no agreement had ever been

reached thereon. Further, he held the salary claim invalid because defendant violated the partnership agreement by not devoting his exclusive time and energy to the partnership, but by devoting much of his time to his personal business with Great Lakes Steel. The circuit judge adopted the commissioner's findings of fact, in an opinion and decree based thereon, and a decree was entered for the original defendant and cross plaintiff dissolving the partnership and finding plaintiff Alford indebted to the cross plaintiff Lehman in the sum of $2,977.09.

On appeal, the original plaintiff presents 1 issue as follows:

"On an accounting between partners, following dissolution of a partnership, should the capital account of a partner be charged $20,000 when he failed to furnish patents of that value as his contribution to the capital of the partnership?"

Defendant, cross plaintiff, appellant and cross appellee Lehman presents 2 issues:

"1. On an accounting between partners, following dissolution of a partnership, is a partner entitled to credit for sums advanced from his personal funds to meet the operating expenses of the partnership business?

"2. Upon an accounting following dissolution of a partnership where the agreement provides that the managing partner shall be allowed an annual salary in an amount to be agreed upon by the parties, is the managing partner entitled to reasonable compensation for management services rendered to the partnership if the other partner rendered no services to the business and if the amount of the salary was never agreed upon by the parties?"

As to the first of these issues, the circuit judge found that the articles of agreement were "too indefinite and ambiguous to charge the defendant with

a $20,000 contribution in lieu of his undertaking whatever that undertaking really was." The crucial language in the written agreement pertaining to patent rights appears to be as follows:

"Whereas, the said party of the first part is the owner of certain patent rights upon precision built machines and parts, *or will be* * * * *as soon as the patent for the same is perfected.*" (Italics supplied.)

There appears to be no dispute but that there were no patent rights at the outset, that no claim to the existence of patent rights had been made by Lehman, and that whatever prospective hopes the partners had about future patent rights never developed into even so much as an application therefor. We agree with the circuit judge that the language quoted from the agreement is too ambiguous to charge defendant Lehman with failure of contribution in the amount of $20,000.

This decision, however, appears to us to be warranted even more specifically by the fact that both the actions and the testimony of the partners clearly indicates that "patent rights" did not represent their contemplation of Lehman's contribution to the enterprise. Plaintiff Alford in his testimony before the circuit court commissioner testified as follows:

"The asset or assets that were worth $20,000 that Mr. Lehman was putting into the business, as far as I was concerned, was the building, the land that it was on and the tools that were in the shop and any materials he might have in the process at the time or sale or contracts that he had of the agreement. The partnership agreement was drawn by Mr. Riggs. Mr. Riggs was my lawyer at that time, and was Mr. Lehman's lawyer, also. It was Mr. Lehman who went to Riggs and asked him to prepare this agreement. I certainly read the agreement before I signed it, and I agreed to everything that was in the agreement. I still agree to it. I agree to the part that says the

land and machinery and the building are not a part of the agreement. The patent rights mentioned in the agreement were supposed to be at least the patent rights on the tractor which he was supposed to produce. I can't tell you what the agreement reads without reading it over, but his idea was that he was perfectly willing to set up his going business against my $20,000."

Plaintiff Alford's testimony in this regard is identical with defendant Lehman's on the original contemplation of the parties. Since it is undisputed that defendant Lehman did bring to the partnership the use of the building, the land it was on, and the tools and materials and "the going business" which he had at the time, we believe the findings of fact of the circuit court commissioner and the decree of the circuit judge should be affirmed as to this issue.

It appears to us that the wording of the agreement represented a plain example of mutual mistake and warranted the reformation actually effected by the decree. *Schwaderer* v. *Huron-Clinton Metropolitan Authority,* 329 Mich 258; *Jensen* v. *Shevitz,* 234 Mich 212; *Burns* v. *Caskey,* 100 Mich 94; 45 Am Jur, Reformation of Instruments, §§ 46, 47.

As to the 2 issues raised on appeal to this Court by defendant Lehman, we believe the briefest comment would be that, on the whole record, he should be content with the decree entered by the court below. The findings of fact of the circuit court commissioner gave him credit for certain specific expenditures on behalf of the partnership which the circuit court commissioner found he had in fact made. Defendant now urges upon us that some $5,155.79 more should be credited to him as contribution to the partnership made by him prior to April 30, 1950.

The evidence is undisputed that in between the signing of the agreement and the date of April 30, 1950, defendant Lehman conducted business on his

own personal account with the Great Lakes Steel Corporation in the sum of $10,500 in the year 1946—$14,000 in the year 1949—and $24,000 in the year 1950. We agree with the circuit court commissioner and the chancellor that this represented a definite violation of the partnership agreement.

The accountant apparently found it impossible to separate the expenses of this work conducted personally by Lehman for his own profit from the expenses of the partnership and in his computation simply estimated, for example, that 1/6 of the total expense for the year 1949 should be allocated to the partnership.

In *Hake* v. *Coach,* 114 Mich 558, 565, this Court said:

"Counsel overlook the fact that, in accounting, the *amount* paid is not enough to enable those dealing with the account to determine its accuracy and fairness. In addition, it must be known *for what* the money was paid. Nor ought complainant to be compelled to accept defendant's statement that the money was expended for the company, without full information as to what the money was expended for."

On the items which were disallowed as partnership contributions, Lehman, in the capacity of cross plaintiff, plainly had the burden of proof. We believe the record discloses that he failed to carry it, and, in effect, that the circuit court commissioner and the circuit judge so found. While we hear chancery matters *de novo* on appeal, we give great weight to the view of the facts taken by the court below. *Blough* v. *Steffens,* 349 Mich 365; *Hartka* v. *Hartka,* 346 Mich 453. As to this issue likewise, we affirm the chancellor.

Finally, we deal with defendant Lehman's second issue, the claim for salary. We believe the opinion of the circuit judge on this issue is warranted by the

record before him, and should be adopted as our finding on this topic:

"The articles of agreement give defendant exclusive control of the operations and require him to devote his full time to the business. In consideration of such services he was to be allowed an annual salary 'in an amount to be agreed upon by the parties.'

"Throughout the 4 years of operation there was never any attempt to discuss salary. Defendant never broached the subject; no weekly or monthly amount was entered on the books for defendant's services. Not until this litigation was instituted was the demand made by the defendant for salary. When making up the audit the accountant, at the suggestion of defendant or his attorney, entered an arbitrary figure of $17,500 for defendant's salary for the entire period.

"Plaintiff claims both of them understood the salary question was deferred until the business showed a profit. The articles contemplate a decision by the parties and in case they are unable to agree on an amount of salary then a reference to arbitration. It was for the defendant to bring up the salary question. By sitting back doing nothing can the defendant take the fixing of the amount of salary out of the hands of the parties themselves or of arbitrators chosen by them in case of a dispute and turn over to a court or jury the question of the amount?

"Counsel have cited numerous cases from different jurisdictions bearing on questions having to do with salaries of managing partners. Each case varies with its particular facts. It is the facts which control the court's determination in each instance.

"Because of defendant's laches in raising the salary question (which conceivably might have altered the entire business arrangement) I am of the opinion defendant is not entitled to the item of $17,-500 claimed as salary. And, as pointed out in the commissioner's report, defendant did not at all times

during the partnership operation devote his time exclusively to partnership business."

Defendant's claim for salary must be founded upon the express terms of the agreement itself since, under Michigan statute and case law, partners are not generally entitled to compensation for services. *Major v. Todd,* 84 Mich 85; *Pierce* v. *Pierce,* 89 Mich 233; *Baker* v. *McGrane,* 198 Wis 512 (224 NW 737); CL 1948, § 449.18(f) (Stat Ann § 20.18[f]).

We note defendant's reliance upon the rule cited in *Arthur* v. *McCallum,* 195 Mich 618, 622:

"In the absence of agreement, one partner cannot collect pay for services performed for the copartnership; each partner is presumed to devote his time, skill, and endeavor to the partnership business and this without compensation, other than his share of the profits. But it does not follow that the court is precluded from taking into consideration all the surrounding facts and circumstances of the case, the course of dealing between the partners, the reasonableness or unreasonableness of the claim made, the probabilities arising out of the conduct of the business, in determining whether such agreement exists. *Morris* v. *Griffin,* 83 Iowa 327 (49 NW 846); *Emerson* v. *Durand,* 64 Wis 111 (24 NW 129, 54 Am Rep 593).

Among the circumstances in the *Arthur Case* was the fact of a prosperous business. The circumstances in the cause we have currently before us include a venture which was financially catastrophic and a material violation of the partnership agreement as to full time endeavor on the part of the partner who now claims a right to salary. The express terms of this agreement pertaining to salary for the defendant were never complied with. We agree with the chancellor that under all the circumstances no liability therefor may be found.

Finally, it should be noted that it is apparent that plaintiff at no time sought an accounting for the

profits, if any, made by defendant Lehman in the conduct of his personal business with the Great Lakes Steel Corporation in violation of the express terms of this agreement. The reasons for this are not stated and we will not speculate about them. Since this issue was not raised or tried below, or here, it cannot well be a part of our consideration even though, this being a chancery cause, we hear it *de novo*.

The decree of the circuit court is affirmed. No costs, neither party having prevailed entirely.

DETHMERS, C. J., and SHARPE, SMITH, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.