STACHNIK v WINKEL

1. FRAUDS, STATUTE OF—REQUIREMENTS—SIGNATURE OF PURCHASER.

   The statute of frauds does not require a contract for the sale of
   land to be signed by the purchaser where his obligation is
   solely to pay money (MCLA 566.108).

2. FRAUDS, STATUTE OF—WRITING—DESCRIPTION OF PROPERTY—SUFFI-
   CIENCY.

   A contract for the sale of land sufficiently describes the property
   for purposes of the statute of frauds where the contract refers
   to property owned by the sellers and specifies the location of
   the property by township, county, and road, where there was
   testimony by one of the sellers that the described property was
   the only property owned by them in the specified county
   (MCLA 566.108).

3. CONTRACTS—MEETING OF THE MINDS—EVIDENCE.

   There was a sufficient meeting of the minds to support a valid
   sales contract for the sale of real estate where the seller
   claimed that he thought at the time of the making of the
   contract that the purchaser was an agent buying for another,
   but where he acknowledged reading a written memorandum of
   the transaction which made no mention of any agency relation-
   ship and later indicated to a third party that the property in
   question had been sold to the purchaser.

4. CONTRACTS—CONSIDERATION—PROMISES.

   A promise may be good consideration for a promise and a
   contract evidenced by mutual promises may be valid; thus a
   contract for the sale of land is not invalid for failure of
   consideration where the consideration is a promise to pay a
   sum of money.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 49 Am Jur, Statute of Frauds § 168.

[3] 17 Am Jur 2d, Contracts § 18 et seq.

[4] 17 Am Jur 2d, Contracts §§ 85, 92, 104–108, 475.

[5] 17 Am Jur 2d, Contracts §§ 28–30.

[6] 54 Am Jur, Trusts §§ 228, 236–241.

[7] 5 Am Jur 2d, Appeal and Error § 545 et seq.

5. CONTRACTS—SALES—REAL PROPERTY—MEMORANDUM—SIGNATURE
   OF PURCHASERS—MUTUALITY OF OBLIGATION.

    A memorandum signed by the sellers evidencing an agreement to
    convey real property to three purchasers cannot be attacked for
    lack of mutuality of obligation on the basis that it was signed
    by only one of the purchasers.

6. TRUSTS—CONSTRUCTIVE TRUSTS—PURCHASES FOR ANOTHER—EVI-
   DENCE—SUFFICIENCY.

    A person who agrees with another to purchase property on behalf
    of the other and purchases the property for himself individu-
    ally holds it upon a constructive trust for the other, even
    though he is not under a duty to purchase the property for the
    other; however, there was insufficient evidence upon which a
    constructive trust or any agency can be established where the
    evidence merely discloses that a person was asked by another
    to speak to a landowner to ascertain if certain property was for
    sale and where that person subsequently purchased the prop-
    erty for himself.

7. APPEAL AND ERROR—PRESERVING QUESTION—PLEADINGS.

    A question raised in the briefs on appeal is not properly before
    the court for review where it had not been a part of the
    pleadings below and had not been before the lower court for
    determination.

Appeal from Leelanau, James M. Fitzpatrick, J.
Submitted Division 3 May 8, 1973, at Grand Rap-
ids. (Docket No. 14209.) Decided October 31, 1973.
Leave to appeal granted, 391 Mich 796.

Complaint by Andrew Stachnik, Clayton Ste-
vens, and Violet Stevens against Carl O. Winkel,
Mary E. Winkel, Harry L. Beach, and Marguerite
C. Beach for specific performance of a contract for
the sale of land. Judgment for defendants. Plain-
tiffs appeal. Reversed.

*Zerafa & Zerafa,* for plaintiffs.

*Hubbell, Blakeslee, McCormick & Houlihan,* for
defendants Beach.

Before: DANHOF, P. J., and McGREGOR and MILES,* JJ.

MILES, J. Plaintiffs Andrew Stachnik, Clayton Stevens and Violet Stevens brought this action for specific performance of a contract to sell land. Defendants Carl O. Winkel, now deceased, and Mary E. Winkel did in fact agree to sell their land in Leelanau County on May 15, 1968. The agreement was put into writing on the following day, May 16, as follows:

"It is agreed that Andrew Stachnik and Clayton and Violet Stevens shall purchase by land contract your property located in Glen Arbor Twp. Leelanau Co. situated on Wheeler Road.

"The conditions of purchase are, $3500.00 with a deposit of $200.00 toward said purchase the balance to be paid at the rate of $100.00 per month with interest of 6% on the unpaid balance. Payments to commence on July 1, 1968. A 2 week grace period on said payments. The accompany check to be cashed upon the submittal of the land contract properly signed and executed.

"Clayton Stevens, et al
Carl O. Winkel
Mary E. Winkel"

Upon the land was a mobile home which served as the Winkels' residence.

The defendants Beach approached defendants Winkel on the second or third of June, along with their attorney. The Winkels advised the defendants that they had already sold their property to plaintiffs. The defendants Beach and their attorney then convinced the Winkels that their agreement with plaintiffs was illegal. Thereupon, the Winkels executed and delivered a warranty deed

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to the same property to the defendants Beach at Flint, Michigan, on June 4, 1968.

Trial was held without a jury and a judgment for the defendants was entered. A motion for a new trial was made and rejected. This appeal resulted.

An action for specific performance is equitable in nature and subject to *de novo* review. This court will not, however, disturb the findings of the trial court unless convinced that it would have reached a different result had it been in the lower court's position. *Stribley v Michigan Marine, Inc,* 42 Mich App 218; 201 NW2d 702 (1972); *Smith v Neilan,* 44 Mich App 394, 397; 205 NW2d 186, 188 (1973).

Numerous issues are presented for our consideration concerning the validity of the first (plaintiffs' May 15–16) agreement executed by defendants Winkel.

### FIRST: *The Statute of Frauds*

Although the Stachnik-Winkel agreement was signed by only one of three plaintiffs (Clayton Stevens), we hold that it would not render the contract void. The obligation of the plaintiffs was solely to pay money. Thus, none of plaintiffs' signatures were required. The Statute of Frauds, MCLA 566.108; MSA 26.908 provides (in part):

"Every contract for * * * the sale of any lands * * * shall be void, unless the contract, or some note or memorandum thereof be in writing and *signed by the party by whom the lease or sale is to be made* * * * ." (Emphasis added.)

The plaintiffs, as purchasers, were required to pay money under the contract. Their signatures were not required. *Pangburn v Sifford,* 216 Mich

153, 155–156; 184 NW 512–513 (1921); *White v Lutheran Salem Church,* 239 Mich 216, 221; 214 NW 245, 246 (1927).

We further hold that the description of the Winkel property was sufficient to withstand attack under the statute. It is described as follows:

"your property located in Glen Arbor Twp, Leelanau Co. situated on Wheeler Road."

Mrs. Winkel has testified that such described property was the only property the Winkels owned in Leelanau County. We consider *Cramer v Ballard,* 315 Mich 496; 24 NW2d 80 (1946), as controlling. The fact situation in this case is different than that in *Fix v Amiot,* 251 Mich 124; 231 NW 114 (1930).

Appellees further attack the Stachnik-Winkel (May 16th) agreement as no mention was made of the mobile home. Was the mobile home included in the sale of the land?

There was no evidence presented or received as to whether the mobile home was, in fact, affixed to the Winkels' land. Appellees claim that there was no evidence of intention that the mobile home was to be included in the sale and that as the mobile home is to be considered as personalty it could not pass under the Statute of Frauds as set forth in MCLA 440.2201; MSA 19.2201. A reading of the transcript is convincing that both plaintiff Stevens and defendant Winkel intended that the mobile home was part of the sale.

Reference to the pleadings indicates that defendant Mary Winkel stated (Interrogatories) that the memorandum of May 16 included "the land and the trailer".

The trial judge found that "a price of $3500 for the land and mobile home was arrived at".

In furtherance of the agreement (Stachnik-Winkel May 16), the Winkels turned over the key to their mobile home and plaintiffs moved in, took possession, and paid utility bills.

Under the above facts, this court will not indulge in an assumption that the mobile home or trailer had a value of $500 or more, thereby rendering the agreement invalid under MCLA 440.2201; MSA 19.2201. It is at least as tenable in considering the intention of the parties, their course of conduct and the size of the property conveyed that the trailer had a value of less than $500.

We hold that the clearly expressed intent of plaintiffs and defendants Winkel was that the trailer was a part of the sale of the lands and that no separate reference was required under the Statute of Frauds.

## SECOND: *Meeting of the Minds*

Appellees claimed at trial that plaintiffs (Stevens) were representing to the Winkels that they were agents for or buying the Winkel land for a company (defendants) and therefore there was, in fact, no meeting of the minds in a sale to plaintiffs as individuals. The trial judge seems to have adopted this view wherein he states in his opinion:

"the Court is of the impression that an error was made in having the agreement indicate a sale of the property to the Plaintiffs."

A review of the transcript reveals that Mrs. Winkel (defendant) thought that plaintiffs were buying the property for a "company". She acknowledged, however, reading the May 16th memorandum and having indicated to defendants when

they approached her that the land had already been sold to plaintiffs.

This court holds that there was a sufficient meeting of the minds in relation to the May 16, 1968 contract of sale.

### THIRD: *Consideration*

The trial judge found that the May 16, 1968 contract was not valid because of a failure of consideration. The court reasoned that this was because under the agreement the check for $200 was not to be cashed until a land contract had been properly signed and executed. We cannot agree.

In *Garlock v Motz Tire & Rubber Co,* 192 Mich 665, 672; 159 NW 344, 346 (1916), the Supreme Court stated:

"It is unnecessary to cite authority to support the proposition that promises may be a good consideration for promises, in that a contract evidenced by mutual promises may be valid."

Under the agreement in question (whether it be the writing of May 16th or the contract that the writing is the memorandum of), the plaintiffs promised to pay $3500 to the Winkels. Notwithstanding the fact that the Winkels were not to cash the $200 check immediately, they were not free to refuse the check and their other obligations and thereby render the contract invalid for failure of consideration on their part.

### FOURTH: *Mutuality of Obligation*

Defendants further attack the May 16th agreement on the ground that plaintiff Stevens alone signed the agreement for the vendees without

their power of attorney and, as the other vendees could not be bound, defendants Winkels should likewise be relieved. See *Ogooshevitz v Arnold,* 197 Mich 203; 163 NW 946 (1917). The contention of defendants is without merit in contracts involving the purchase of real estate. *Smith v Mathis,* 174 Mich 262; 140 NW 548 (1913); *Randazzo v Kroenke,* 373 Mich 61; 127 NW2d 880 (1964), and *Klymyshyn v Szarek,* 29 Mich App 638; 185 NW2d 820 (1971).

## FIFTH: *Constructive Trust*

Appellees further claimed, with success in the trial court, that a constructive trust should be applied if it is found that the May 16 agreement is valid. The trial court found the plaintiffs were claiming to be representing a company (defendants); that defendant Beach owned an adjoining 80 acres on which plaintiff was carrying on lumber operations and that Beach would need ingress and egress.

A review of the pleadings discloses that fraud has not been specifically pleaded and the Beaches' original counsel did not counterclaim against plaintiff. Defendants Beaches' motion to file a counterclaim contains nothing about agency by plaintiffs. A review of the transcript reveals that defendant Beach testified that he only asked plaintiff to speak to the defendants Winkel to ascertain if their property was for sale.

It is the recognized law of the state that:

"A person who agrees with another to purchase property on behalf of the other and purchases the property for himself individually holds it upon a constructive trust for the other, even though he is not under a duty to purchase the property for the other."

*Evanoff v Hall,* 310 Mich 487, 493; 17 NW2d 724, 726 (1945).

This is true even where a nonprofessional person gratuitously agrees to purchase property on behalf of another.

There is insufficient evidence upon which a constructive trust or any agency can or should be established.

### SIXTH: *Clean Hands*

It is the further claim of defendants-appellees that specific performance should be denied to plaintiffs-appellants under the clean hands doctrine. They assert that plaintiffs misrepresented to the defendants Winkel whom they were purchasing the property for and that they breached an agency relationship.

According to defendant Mary Winkel, it was not the capacity of the plaintiffs that induced a sale. She testified:

"he asked us if we wanted to sell. Well, with a lumber mill next door, it wasn't quiet and peaceful anymore, so my husband really sort of lost interest in the whole thing."

As to the mission performed by plaintiff Stevens, defendant Beach testified:

"We asked them to go up and see if there was people who were interested in selling the property."

The weakness of the supportive evidence received may well explain why the issue was not raised by either of the defendants in their pleadings nor was it mentioned in the pretrial statement filed by the court.

It has been stated by the Supreme Court in *Portell v Feldman,* 354 Mich 611, 614; 93 NW2d 305, 307 (1958):

"We have repeatedly held that a case in the Supreme Court will not be reviewed on a theory different from that on which it was tried below."

See *Alford v Lehman,* 350 Mich 446, 458; 86 NW2d 330, 336 (1957).

In *Lafayette Dramatic Products, Inc v Ferentz,* 305 Mich 193, 218; 9 NW2d 57, 66 (1943), the Supreme Court indicated that because a question raised in the briefs had not been a part of the pleadings it was not before the court for determination. There is a sound rationale for this principle. Both parties should be fully apprised of the issues upon which they expect to join.

We cannot help but view the conduct of both parties in relation to one another. In seeking out the Winkels and unilaterally persuading them that their original conveyance to the plaintiffs was defective, defendants Beach have caused the surviving widow to be a party defendant. Defendants are not in a strong tenable position to raise the issue of clean hands in this case.

Plaintiffs may have specific performance of their land contract.

The case is reversed. Costs to plaintiffs-appellants.

All concurred.